**SAM HOUSTON ELECTRIC COOPERATIVE, INC.,**
Appellant,

v.

**The PUBLIC UTILITY COMMISSION OF TEXAS, Appellee.**

No. 14587.

Court of Appeals of Texas,
Austin.

May 6, 1987.

Rehearing Denied Aug. 12, 1987.

Dick Terrell Brown, McCamish, Ingram, Martin & Brown, P.C., Austin, for appellant.

Jim Mattox, Atty. Gen., Stephen Davis, Asst. Atty. Gen., Austin, for Public Utility Com'n of Texas.

H. Dixon Montague, Vinson & Elkins, Houston, for Robert S. Baird, et al.

M. Michael Park, Davis, Durham & Park, Huntsville, for George H. Lemmer, Jasper Missionery Baptist Church, et al.

Before SHANNON, C.J., and SMITH and GAMMAGE, JJ.

GAMMAGE, Justice.

Sam Houston Electric Cooperative, Inc. ("SHECO") appeals the district court judgment affirming an order of the Public Utility Commission ("Commission") which denied SHECO's application for amendment of its certificate of convenience and necessity. We will reverse the judgment of the district court.

SHECO is a "public utility" as defined by the Public Utility Regulatory Act ("PURA"), Tex.Rev.Civ.Stat.Ann. art. 1446c, § 3(c) (Supp.1987). On October 7, 1981, SHECO filed an application to amend its certificate of convenience and necessity to allow construction of a transmission-line project composed of three elements: a 5.3–mile, 138–kilovolt electric transmission line ("TEMCO/Evergreen line"); an associated switching station ("TEMCO switching station"); and an associated distribution substation ("Evergreen substation"). The Commission set the application in Docket Number 4101. In October 1981, before the Commission had acted upon SHECO's application, SHECO cleared a 100–foot right-of-way over which it planned to construct the TEMCO/Evergreen transmission line. The Commission approved the amendment of SHECO's certificate to allow construction of the project on December 3, 1981.

Robert S. Baird, an owner of property over which SHECO proposed to construct its transmission line, filed a complaint against SHECO on January 25, 1982. Baird's complaint, filed in Docket 4292, alleged that SHECO gave inadequate public notice of the application to amend its certificate. On March 11, 1982, the Commission voided the previously granted certificate amendment on three grounds: (1) SHECO failed to comply with the agency's public notice requirements; (2) SHECO failed to obtain a certificate before construction of the proposed project; and (3) proper public notice is a jurisdictional requirement in certification cases.

SHECO filed a new certificate amendment application in Docket 4405 on March 26, 1982, and published proper notice of its

application. Several interested parties, including Baird, intervened to protest the application. After an evidentiary hearing on the merits, the examiner issued a report recommending the certificate be amended. The examiner determined that certification of the proposed transmission line project was necessary for the service, accommodation, convenience and safety of the public under PURA § 54(b). The examiner also concluded that certification of the proposed project would not have a negative impact on aesthetic values, environmental integrity, community values, recreational and park areas, or historical values under PURA § 54(c). The intervenors filed exceptions to the examiner's report.

The Commission heard oral argument and on July 9, 1984, issued its final order. The Commission's final order set aside the opinion portion of the examiner's report and entered new findings of fact and conclusions of law supporting a denial of SHECO's application. The Commission determined that SHECO failed to meet its statutory burden of proof under PURA § 54(c) and failed to prove the transmission line was needed. It also held that the proposed transmission line project necessarily encompassed the proposed TEMCO switching station and Evergreen substation and, therefore, a denial of certification for the line deprived SHECO of the legal authority to construct any portion of the project.

SHECO appealed to the district court which affirmed the Commission's order on grounds that it was supported by substantial evidence and was based upon lawful Commission procedures. The district court also ruled that SHECO could not join a declaratory judgment action to its administrative appeal and refused to hear evidence relating to the declaratory judgment action.

SHECO brings six points of error, arguing first that the trial court erred in concluding the Commission did not exceed its statutory authority in prohibiting construction of the proposed transmission line project because the facilities sought to be constructed are statutorily exempt from certification.

PURA § 50 requires generally that public utilities obtain a certificate of convenience and necessity before rendering utility service to the public. Exceptions to the certification requirement are set out in PURA § 51:

Sec. 51. (a) A public utility is not required to secure a certificate of public convenience and necessity for:

\* \* \* \* \* \*

(2) an extension within or to territory already served by it or to be served by it under a certificate of public convenience and necessity; or

\* \* \* \* \* \*

(b) Any extensions allowed by Subsection (a) of this section shall be limited to devices for interconnection of existing facilities or devices used solely for transmitting public utility services from existing facilities to customers of retail utility service.

SHECO urges that the proposed transmission line falls within the § 51(a)(2) exception to the certification requirement because it would be built within an area already served by SHECO under its certificate of convenience and necessity. We question but do not decide whether the proposed facilities qualify as an "extension" within the meaning of § 51(a). SHECO's own engineer and expert witness testified as follows:

Q. Is this 138 KV line—or did you characterize it as a new line?

A. It's the first segment of a planned transmission line that we would have west of Lake Livingston.

Q. It's not an extension of any other 138 KV line owned by Sam Houston, is it?

A. No.

\* \* \* \* \* \*

A. It is not an extension of an existing Sam Houston [line].

Q. Is there any way in the fartherest [sic] stretch of your imagination that you

could characterize this 138 KV Temco to Evergreen transmission line as an extension right now? Not that it will be extended but as an extension right now of an existing Sam Houston line?

A. Not of a Sam Houston line.

■ Even if the proposed line qualifies as an extension, it must still meet the limits imposed by PURA § 51(b). SHECO argues there are two limitations in § 51(b): (1) "devices for interconnection of existing facilities"; or (2) "devices used solely for transmitting public utility services from existing facilities to customers of retail utility service." The Commission, on the other hand, claims the phrase "used solely for transmitting public utility service from existing facilities to customers of retail utility service" qualifies the phrase "existing facilities or devices," constituting only one limitation to § 51(a)'s non-certification exceptions. We need not resolve this question.

Even were we to accept the broader construction of § 51(b) urged by SHECO (again assuming arguendo that the proposed facilities qualify as an "extension" under § 51(a)), we still find the proposed facilities would not qualify as either "devices for interconnection of existing facilities" or "devices used solely for transmitting public utility services from existing facilities to customers of retail utility service."

SHECO argues the transmission line project will interconnect existing facilities because the proposed Evergreen substation is to be located near three existing distribution feeder lines. The Commission, however, made a finding of fact that the actual point of convergence of the feeder lines is six tenths of a mile from the substation site, and the proposed project does not include connection of those lines to the substation. On the contrary, the proposed facilities are not anticipated to connect with any existing facility at this time. This finding of fact is supported by the testimony of SHECO's engineering expert. Because the Commission's finding of fact is supported

by substantial evidence, we are unable to say the trial court erred in failing to find that the proposed facilities qualified under PURA § 51(b) as "devices for interconnection of existing facilities."

We are furthermore not persuaded by SHECO's argument that a major project such as the proposed 138–KV transmission line is free of the certification requirement because the line will "be used solely for transmitting public utility services from existing facilities to customers of retail utility service." "Transmission lines" are defined by the Commission as:

Those lines which are used for bulk transmission of ... electricity ... which are not normally used for serving the end user. For electric utilities, this includes all lines operated at 60,000 volts or above, when measured phase-to-phase.

16 Tex.Admin.Code § 23.31(a)(1). By contrast, "distribution lines" are defined as "[t]hose lines from which the end user may be provided direct service." 16 Tex.Admin. Code § 23.31(a)(3). The proposed line is clearly a "transmission line" and not a "distribution line" as contemplated by the Commission definitions.

The Commission, pursuant to PURA § 16(a), has promulgated rules requiring certification for new transmission lines, but not for "the construction ... of distribution facilities within the utility's service area." 16 Tex.Admin.Code § 23.31(c)(1)(C) and (c)(2)(E). The Commission's construction of PURA § 51(b) is consistent with the statutory language and with the legislative policy and purpose of PURA to "establish a comprehensive regulatory system ... to assure rates, operation, and services which are just and reasonable to the consumers and to the utilities." PURA § 2. As stated in Toben, *Certificates of Convenience and Necessity Under the Texas Public Utility Regulatory Act*, 28 Baylor L.Rev. 1115, 1128–29 (1976):

The first part of [section 51(b)], "devices for interconnection of existing facilities," does not provide for extension into new service areas, but the second part of the

section, "devices used solely for transmitting public utility services from existing facilities to customers of retail utility service," contemplates extension to new service areas. Such extension would be limited to "drop-off" lines, or the final distribution or collection lines reaching the consumer. By so limiting the scope of extension, *the utilities are geographically limited to extension only so far as they can economically extend "drop-off" lines, since they cannot construct new generation or transmission facilities in the territory unless the utility first secures certification under section 50(1).* This accomplishes the purpose of section 50(a)(1) and at the same time precludes the possibility of a utility extending into a territory of significant size without first securing certification under section 50(2).

*See also* comments at 9 Tex.Reg. 993, 1010 (Feb. 9, 1984). SHECO's first point of error is overruled.

SHECO contends in its second point of error that the trial court erred in dismissing its declaratory judgment action as improperly joined with the appeal. The declaratory judgment action, brought pursuant to the Administrative Procedure and Texas Register Act ("APTRA"), Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 12 (Supp. 1987), sought the district court's assessment of the validity of the Commission's rule requiring certification of new electric transmission lines. Because we addressed the merits of this complaint under SHECO's first point of error, we need not decide whether the district court erred by dismissing the declaratory judgment action. Such error, if any, was harmless. Tex.R. App.P.Ann. 81(b)(1) (Supp.1987).

By its third point of error, SHECO argues the trial court erred in concluding the Commission did not improperly rely upon nonstatutory factors in determining that SHECO presented insufficient and unreliable evidence under § 54(c) of PURA. The utility specifically asserts that two of the Commission's findings of fact refer to criteria upon which SHECO was not statutorily required to present evidence: (1) the finding that SHECO did not prepare an alternative route study for its proposed transmission line; and (2) the finding stating that SHECO did not present evidence of alternative solutions to meet demand in the proposed Evergreen service area. SHECO argues that because the Commission improperly relied upon these nonstatutory factors, its action was arbitrary and capricious. APTRA § 19(e)(6).

PURA directs the Commission to grant an application for a certificate of public convenience and necessity only upon an ultimate fact determination that the certificate is necessary for the service, accommodation, convenience, or safety of the public. PURA § 54(b). In making this determination, the statute directs the Commission to consider particular factors:

> Certificates of convenience and necessity shall be granted on a nondiscriminatory basis after consideration by the commission of the adequacy of existing service, the need for additional service, the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and on such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers in such area resulting from the granting of such certificate.

PURA § 54(c). The Commission must articulate underlying findings of fact relating to relevant § 54(c) factors in order to support its ultimate fact conclusion under § 54(b). APTRA § 16(b); *Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.,* 665 S.W.2d 446, 451 (Tex. 1984).

PURA § 54(c) does not specifically require the applicant to present evidence that it studied alternative solutions to its problem or alternative routes for the location of transmission lines. *See Frost v. Public*

*Utility Commission,* 672 S.W.2d 883, 885 (Tex.App.1984, writ ref'd n.r.e.). SHECO cites *Frost; Public Utility Commission of Texas v. South Plains Electric Cooperative, Inc.,* 635 S.W.2d 954 (Tex.App.1982, writ ref'd n.r.e.); and *Starr County v. Starr Industrial Services, Inc.,* 584 S.W.2d 352 (Tex.Civ.App.1979, writ ref'd n.r.e.) in support of its contention that the agency's reliance on nonstatutory factors necessarily resulted in arbitrary and capricious decision-making.

The cases cited by SHECO, however, are distinguishable. In *South Plains,* the Court determined that the Commission arbitrarily and capriciously granted a certificate to serve a specific area because the grant rested on the nonfactual, quasi-legal presumption that a municipally-owned utility should be given preference over private utilities serving municipal residents. In *Starr County,* the agency relied heavily upon local opposition in determining that granting a permit "would be contrary to the welfare of the people in the area." 584 S.W.2d at 354. In both cases, the agency improperly relied upon nonstatutory criteria in forming its decision, implicitly imposing an unanticipated burden upon the applicant.

In this case, however, evidence was presented in opposition to SHECO's application indicating that SHECO may not have chosen the route most favorably impacting upon "factors such as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers." PURA § 54(c). Evidence was also presented of possible alternative ways to upgrade the system in a manner having less negative impact upon the environment and involving less expense than building the proposed 138 KV line and associated facilities.

■ *Frost* holds that the agency has *no duty* under § 54(c) to make findings regarding alternative route studies; however, we do not read *Frost* as *prohibiting* the agency from making such a finding if

such finding is relevant to the factors listed in PURA § 54(c). It would be absurd to construe *Frost* as prohibiting the agency's consideration of possible alternative routes when such consideration necessarily bears upon § 54(c) factors. We do not here hold that an applicant must present evidence of alternative route consideration as part of its case in chief in order to satisfy its burden under PURA § 54; we do hold, however, that if evidence is adduced that § 54(c) criteria were not adequately considered in selecting a proposed route, the applicant is not insulated by *Frost* from having to rebut this evidence in order to avoid an adverse finding under § 54(c).

On the record before us, the Commission's findings regarding SHECO's lack of alternative route studies and lack of evidence of alternative solutions were proper under § 54(c). Both issues were raised by intervenors before the Commission as bearing unfavorably upon the values of the community, aesthetic values and environmental integrity, or as having a probable negative impact on the cost of service to consumers. The factors listed in § 54(c), furthermore, were not intended to be exclusive. The statute says "such factors as...." Whether SHECO carefully considered the impact of the proposed transmission line route or the possible existence of less expensive alternative solutions is clearly relevant to § 54(c) criteria and subject to Commission consideration. *See Public Utility Commission v. Texland Electric Co.,* 701 S.W.2d 261 (Tex.App. 1985, writ ref'd n.r.e.). SHECO's third point of error is overruled.

By its fourth point of error, SHECO contends the trial court erred in concluding that the Commission based its final order upon lawful agency procedure because, SHECO claims, several rules were adopted after the hearing and then applied to SHECO retroactively. A "rule" is defined as "any agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the procedure or practice requirements of an agency." APTRA § 3(7).

SHECO challenges the following findings of the Commission:

24. SHECO did not present studies or evidence to show whether demand could be met in the proposed Evergreen service areas by alternative facilities rather than by the proposed transmission line.

\* \* \* \* \* \*

32. SHECO prepared no alternative route study for the proposed transmission line.

\* \* \* \* \* \*

35. SHECO failed to present evidence concerning the effect of the proposed facilities on human health. Specifically, it presented no evidence on the effects that herbicides, soil sterilants, and possible chemical spills in the substation area would have on nearby residents or on the well water used by those residents. Also, it presented no evidence on the effect of noise on nearby residents.

36. Noise and chemical pollution are common transmission line issues; the utility should be prepared to present evidence on these issues as part of its case in order to permit the Commission to review the certification application properly under Section 54(c).

37. The only favorable evidence concerning the effect of the facilities on the human environment was provided by the Commission's staff engineer, who was not an expert on the health effects of transmission facilities.

SHECO argues the above findings constitute "rules," promulgated through ad hoc adjudication, which were applied retroactively to deny SHECO the amendment it sought. In so doing, SHECO argues, the Commission abused its discretion and acted on unlawful procedure. APTRA § 19(e)(3) and (6).

Under APTRA's definition, a "rule" must have "general applicability." Finding number thirty-six is the only challenged finding which appears to have general applicability. Regardless of whether these findings constitute "rules" within the meaning of APTRA, however, we find SHECO has failed to show it was prejudiced in any way. APTRA § 19(e).

SHECO alleges it was not apprised of the burden it was required to carry under PURA § 54(c) because of the generality of the statutory language. For example, it argues the Commission failed to promulgate rules in accordance with the authority granted by PURA § 16(a) to give fair notice that an applicant would be required to present evidence bearing upon possible alternative routes and solutions, noise and chemical pollution, and potential effects on human health and human environment. We disagree.

■ Our discussion under SHECO's third point of error is equally applicable here. Each of the issues challenged by SHECO was raised by the intervenors prior to the Commission hearing in prefiled direct testimony, and each of the issues is clearly relevant to § 54(c) criteria. SHECO had adequate notice that evidence on these issues would be presented at the hearing and cannot now argue that the Commission's failure to promulgate rules relieved SHECO of its responsibility to rebut clearly relevant adverse evidence. The findings challenged by SHECO were based upon relevant evidence properly adduced. SHECO's fourth point of error is overruled.

By its fifth point of error, SHECO argues the trial court erred in concluding that the Commission correctly applied and interpreted its substantive rules because the Commission's final order is inconsistent with its substantive rules.

■ The Commission's final order states that SHECO was required under Commission Substantive Rule 052.02.05.056(1)(c) to amend its certificate of convenience and necessity before constructing the TEMCO switching station and the Evergreen substation. The substantive rule relied upon by the Commission was not in effect at the time the final order was adopted. The rule, as amended and effective at the time

of the final order, appears in 16 Tex.Admin. Code § 23.31, and provides:

(1) A certificate, or certificate amendment, is required for the following:

\* \* \* \* \* \*

(C) a new electric transmission line;

\* \* \* \* \* \*

(2) A certificate is not required for the following:

\* \* \* \* \* \*

(B) a new electric high voltage switching station;

(C) a new electric substation within the utility's certificated area;

\* \* \* \* \* \*

Given the clear and unambiguous language of the Commission's regulation, we must agree with SHECO that the Commission violated its own rules in holding that certification was required for the switching station and the distribution substation. We find no language in the Commission's regulation which justifies requiring certification of the proposed switching station and substation simply because they are associated with a transmission line. By failing to follow its own regulations, the Commission's action was arbitrary and capricious. APTRA § 19(e)(6). SHECO's fifth point of error is sustained.

By its sixth point of error, SHECO argues the trial court erred in concluding that substantial evidence exists in the agency record to support the PUC's final order because several of the findings of fact upon which the Commission relied were not supported by substantial evidence.

We are required to determine whether the Commission's findings and conclusions are "reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole." APTRA § 19(e)(5). The true test is not whether the agency correctly decided the issues, but whether reasonable minds could have reached the findings and conclusions

the agency reached in order to justify its decision. *Suburban Utility Corp. v. Public Utility Commission*, 652 S.W.2d 358, 364 (Tex.1983).

SHECO first challenges the sufficiency of the evidence to support finding of fact number 17 that the Commission staff engineer, Mr. Saathoff, based his recommendation for certification of the line on the utility's unfounded allegation that insufficient power capacity would be available to SHECO at the Willis substation.

In his prefiled testimony, Saathoff briefly discusses SHECO's problems in maintaining adequate voltage in the Evergreen area and he then states:

I also understand that GSU [Gulf States Utilities] has limited the amount of power available to [SHECO] at the Willis point of delivery. A solution is to establish a new power source in the New Waverly-Evergreen area which [SHECO] proposes to do with the Evergreen substation. The purpose of the TEMCO to Evergreen transmission line is to get power from [SHECO's] supplier, GSU, at TEMCO to the substation.

Continuing, Saathoff testified that even if he assumed additional power capacity was available at the Willis point of delivery, the problems in the Evergreen service area could be alleviated by increasing the voltage of the distribution lines and/or upgrading the lines by increasing conductor sizes (both proposed as alternative solutions by the intervenors). Saathoff claims that these alternatives are less desirable than the transmission line project largely because of the expense involved. SHECO's consulting engineer testified, however, that the utility already planned to reinsulate and upgrade all of its lines by 1984, including those located in the Evergreen service area, as part of a long-range system improvement plan.

In addition, Saathoff testified on cross-examination that he predicated his recommendation for certification in part on the belief that availability of power would be limited at the substation. There was

evidence, however, that power would indeed be available, and that the only problem was a potential shortage of transformer capacity. Saathoff also stated that if more power were available from GSU to the existing substation, and if the cooperative's 1981–82 Work Plan overestimated its demand forecast for the area, then he "would have to reconsider" his recommendation. He testified further that if power were available from GSU, the upgrade of existing lines in the area without accompanying voltage increase—even if the utility's demand projections were correct—would solve problems in the area for at least ten years. We hold finding of fact number 17 is supported by substantial evidence.

SHECO next challenges the sufficiency of the evidence to support findings of fact 19 through 23 relating to the accuracy of historical and projected demand growth estimations for the Evergreen area used by SHECO in determining the necessity for the Evergreen line.

SHECO argues there is not substantial evidence in the record that its projections were conflicting, inaccurate and overstated. Much of the hearing was devoted to this issue and much evidence was presented on both sides. SHECO, however, argues that the intervenors introduced no *competent* evidence at the hearing because one of the intervenors' witnesses, Webb, testified he was not an expert on load forecasting, and another, Fitzroy, testified he had never been employed to do load forecasting for an electric utility company. SHECO's objection goes to the weight to be assigned the witnesses' testimony, the determination of which was within the Commission's discretion. APTRA § 19(e); *Southern Union Gas v. Railroad Commission,* 692 S.W.2d 137 (Tex.App.1985, writ ref'd n.r.e.).

■ The reliability of SHECO's load forecasts was furthermore vigorously attacked on cross-examination of SHECO's consulting engineer, who admitted that he had not conducted any population studies for the proposed service area and could not estimate the population for that area even

though population affects load growth. He also admitted having no knowledge of the actual rate of industrial and residential construction in the proposed service area. We find substantial evidence in the record to support findings 19 through 23.

SHECO challenges findings 15 and 16 as being unsupported by substantial evidence. Finding of fact 15 states that no record evidence supports SHECO's allegation that GSU would soon remove its transformer and discontinue supplying power to SHECO at the Willis substation. Finding of fact 16 states that even if GSU removed its transformer, SHECO would replace it.

SHECO has cited us to a number of places in the record where representatives of SHECO allege that SHECO's power supply via the GSU transformer at the Willis substation is temporary. Finding number 15 does not dispute this allegation by SHECO, but merely states the allegation is not corroborated in the record by any other source. SHECO has cited us to no such confirming evidence and we find none. We are therefore unable to say finding of fact 15 is not supported by substantial evidence.

Regarding finding number 16, appellee has not cited and we are unable to find in the record any evidence that, should it be removed, SHECO would be able to replace GSU's transformer with one of its own. But, we also have found no evidence to the contrary. This particular issue appears not to have been addressed. In light of finding number 15 and other evidence in the record, however, we do not believe finding number 16 is necessary to the ultimate findings of the Commission. Because no substantial right of SHECO has been prejudiced by the failure of the district court to find that the Commission's 16th finding is unsupported by substantial evidence, the error is harmless. APTRA § 19(e); Tex.R. App.P.Ann. 81(b)(1) (Supp.1987).

SHECO next challenges the Commission's finding 33 that SHECO's evidence on the PURA § 54(c) criteria was unreliable because the Borrower's Environmental Report [BER] prepared by SHECO's engineer

did not evaluate the specific site chosen for the proposed project and the post-clearing studies evaluated an environment which had already been altered.

■ SHECO's consulting engineer admitted that the BER was not site specific, but instead generally evaluated an area as large as south Walker County. Furthermore, the intervenors presented evidence that post-clearing studies performed by SHECO's witnesses were subject to inaccuracies and that certain factors having a potential impact upon § 54(c) criteria had been overlooked. One of SHECO's witnesses testified that a base-line study, a study of conditions as they exist prior to alteration, is necessary in order to measure the effects of alteration against an existing condition, and that it would not be possible to adequately characterize the impact of alteration without having made a base-line study. The same witness testified that because the proposed right-of-way environment had already been altered, no base-line study was possible. We find the trial court did not err in holding that Commission finding of fact number 33 is supported by substantial evidence.

SHECO also challenges Commission finding 37 which states that the only favorable evidence concerning the effect of the facilities on human environment was provided by the Commission's staff engineer, who is not an expert on the health effects of transmission facilities. SHECO cites favorable testimony by its experts regarding the project's impact upon aesthetics, recreational and park areas, and historical and archeological factors. SHECO points to this testimony as being relevant to the "human environment."

SHECO misinterprets finding 37 which admittedly could have been drafted less ambiguously. It is clear from the context, however, that the Commission used the term "human environment" to refer to health effects. SHECO admits in the record that it presented no evidence on human health effects. We reject SHECO's challenge to Commission finding 37.

Having carefully considered and examined the record relative to SHECO's remaining arguments under point of error number six, we find them to be without merit.

Because we sustain SHECO's fifth point of error, we reverse the judgment and remand the cause to the district court with instruction to remand this cause to the agency for further proceedings consistent with this opinion.