BRAZOS ELECTRIC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-94-015-CV





BRAZOS ELECTRIC POWER COOPERATIVE, INC.,



 APPELLANT


vs.





PUBLIC UTILITY COMMISSION OF TEXAS; AND CHARLES AND JANIE PEDERSON,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 93-00973, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 





 Appellant, Brazos Electric Power Cooperative, Inc. ("Brazos"), appeals from a
district-court judgment affirming the Public Utility Commission's (the "Commission") denial of
Brazos's application for amendment of its certificate of public convenience and necessity to
construct an electric transmission line. The Commission found that Brazos failed to adequately
prove need for the line as required by section 54(b) of the Public Utility Regulatory Act. See Tex.
Rev. Civ. Stat. Ann. art. 1446c, § 54(b) (West Supp. 1994) ("PURA"). We will affirm the
district court's judgment.



BACKGROUND


 Brazos is a wholesale generator and distributor of electricity. In November 1991,
Brazos filed an application with the Commission to amend its certificate of convenience and
necessity to authorize construction of a transmission line and related substation in Ellis County. 
In its application Brazos cited three reasons for the proposed construction: (1) to upgrade
Brazos's system and prevent power outages in one of its service areas; (2) to improve reliability
of service to an existing substation by providing "loop" rather than "radial" transmission; and (3)
to provide more reliable power for construction of the Super Conducting Supercollider (1) project.

 Brazos identified three alternate routes for the proposed transmission line in its
application. The most direct and preferred route ran 2.86 miles from an existing Brazos
substation to the new substation; however, this route also traversed property of several
landowners. Two longer routes, 3.39 and 4.3 miles respectively, avoided crossing much property
by following road frontages and property lines.

 In accordance with Commission rules, Brazos notified all landowners affected by
the proposed facilities and published notice of the application in newspapers of general circulation. 
See 16 Tex. Admin. Code § 22.52 (1994). Various landowners intervened or voiced their
opinions supporting or opposing the application. Appellees Charles and Janie Pederson (the
"Pedersons") intervened in opposition, contending inter alia that Brazos had failed to prove need
for a new transmission line. After a hearing, the Commission issued an order denying the
application because Brazos failed to establish that the proposed transmission facilities were
necessary for the service, accommodation, convenience, or safety of the public as required by
section 54(b) of PURA. See PURA § 54(b). The district court affirmed.

 In eleven of its twelve points of error, Brazos challenges the trial court's judgment
on two basic grounds: (1) there is a lack of substantial evidence to support the Commission's
decision that Brazos did not establish a need for the proposed line; and (2) the Commission's
decision was arbitrary, capricious, and an abuse of discretion because it was based on criteria not
defined by statute or Commission rule. In its first point of error, Brazos complains of the trial
court's failure to file conclusions of law.



DISCUSSION


A.  Failure to File Conclusions of Law

 In its first point of error, Brazos argues that the trial court's failure to file
conclusions of law prevents Brazos from determining the basis on which the trial court affirmed
the Commission's decision and necessitates appellate review of every ground for the affirmance.

 Generally, "even if requested, the trial court need not file findings of fact and
conclusions of law following rendition of judgment in a suit for judicial review under [the
Administrative Procedure Act (2)]." State v. Public Util. Comm'n, 840 S.W.2d 650, 656 (Tex.
App.--Austin 1992, writ granted). Findings of fact by the trial court are not required in
administrative review cases when the question to be determined by the trial court is one of law: 
usually, whether the agency's decision is reasonably supported by substantial evidence or whether
the agency acted arbitrarily. (3) See Wylie Indep. Sch. Dist. v. Central Educ. Agency, 488 S.W.2d
166, 168 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.). Moreover, conclusions of law are
superfluous if the district court affirms an agency order, because the court impliedly rejects all
arguments raised by the party seeking review. Brazos claimed below that the Commission's
decision was not based on substantial evidence and was arbitrary and capricious. By affirming
the Commission's decision, the trial court impliedly rejected both of Brazos's contentions. 
Consequently, if Brazos believes further review is warranted under both a "substantial evidence"
and "arbitrary and capricious" standard, it must challenge the trial court's judgment on both
grounds, as it has done. The absence of conclusions of law has not harmed or prejudiced Brazos
in any way. See Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989). We
overrule Brazos's first point of error.



B.  Substantial Evidence

 In its eleventh point of error, Brazos claims the record does not contain substantial
evidence reasonably supporting the Commission's conclusion of law and underlying findings that
Brazos failed to demonstrate a need for the proposed transmission facilities as required by PURA
section 54(b). (4) Brazos argues that four of the Commission's findings of fact specifically negate
its conclusion that there was no need and thereby establish need as a matter of law.

 When reviewing an agency decision for substantial evidence, we presume that the
order is valid. Imperial Am. Resources Fund, Inc. v. Railroad Comm'n of Tex., 557 S.W.2d 280,
284 (Tex. 1977); Pedernales Elec. Coop., Inc. v. Public Util. Comm'n, 809 S.W.2d 332, 341
(Tex. App.--Austin 1991, no writ). Considering the record as a whole, we determine whether
reasonable minds could have reached the same decision as the agency. Texas Health Facilities
Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984); Lone Star Salt
Water Disposal Co. v. Railroad Comm'n, 800 S.W.2d 924, 928 (Tex. App.--Austin 1990, no
writ). The test is not whether the agency reached the correct conclusion, but whether some
reasonable basis exists in the record for the agency's action. Charter Medical, 665 S.W.2d at
452. Substantial evidence may exist even if evidence in the record preponderates against the
agency's decision. Id. In short, we may not substitute our judgment for that of the agency. Lone
Star, 800 S.W.2d at 928.

 As the applicant, Brazos bore the burden of establishing that the certificate was
necessary for the service, accommodation, convenience or safety of the public, considering not
only the need for additional service, but also the effect of the proposed transmission line on
existing utilities, community values, recreational areas, historical and aesthetic values,
environmental integrity, and the improvement of service or lowering of cost to consumers. See
PURA §§ 54(b), 54(c). The Commission concluded that Brazos failed to demonstrate that the
proposed facilities were necessary taking into account these factors. An agency's negative finding
will be sustained unless the evidence conclusively requires an affirmative finding. Gerst v.
Goldberg, 434 S.W.2d 665, 667 (Tex. 1968).

 In four of its findings of underlying fact, the Commission recognized: (1) that the
subject area has a potential for increased electricity needs due to its proximity to the Dallas/Ft.
Worth metroplex; and (2) that due to the configuration of Brazos's system, an outage on one line
could result in low voltage or outage problems on other lines. Brazos contends that these findings
conclusively establish need as a matter of law. We disagree, considering other findings of the
Commission, which include: (1) Brazos is currently providing adequate service to the area; (2)
no low voltage conditions occurred during the 1992 peak-load period; (3) Brazos used only
historical data rather than forward-looking indices to predict future need; (4) Brazos failed to
consider alternatives to construction of additional facilities, such as load management,
conservation, efficiency, or use of additional existing right-of-way owned by Texas Utilities
Electric Company; and (5) Brazos offered no evidence indicating construction power requirements
for the Super Conducting Supercollider project, one of Brazos's three stated purposes for
amendment of its certificate.

 The underlying record evidence further supports the Commission's decision. 
According to Brazos's own historical data, demand at the substation Brazos planned to bolster by
constructing the new line had actually decreased since 1989. A survey introduced by intervenors
Pedersons reflected population growth of only .3% from 1990 to 1991 in Ellis County. The
record also demonstrates that Brazos failed to account for a proposed zoning plan of the Ellis
County Planning and Zoning Commission that would limit development in the area.

 If there is evidence to support either an affirmative or a negative finding, we must
uphold the agency decision. Charter Medical, 665 S.W.2d at 453. It is immaterial that some
findings or portions of the record weigh against an agency's decision if other findings and record
evidence support that decision. Even though some of the Commission's findings support the
position that, in the absence of other considerations, an additional line may be desirable, the
findings do not establish a need for the line as a matter of law. On the contrary, such diverse
findings merely confirm that the agency engaged in "a process of discussion [and] careful
consideration" in reaching its decision. See Pedernales Elec., 809 S.W.2d at 341; see also Goeke
v. Houston Lighting & Power Co., 797 S.W.2d 12, 15 (Tex. 1990).

 The Commission's careful deliberation is documented in the Commission's order
and in the concurring opinion of Commissioner Karl Rabago. Commissioner Rabago criticized
the Hearing Examiner for recommending that a certificate be granted despite Brazos' insufficient
proof of need and inadequate consideration of the statutory factors:



[T]here is 1) an insufficient effort to address and work with the interests of affected
landowners, and 2) an inadequate, in fact nearly absent, effort to consider
alternatives to the construction of the line. On this issue, I specifically point to
alternatives such as load management, conservation, and efficiency; as well as the
installation of photovoltaic, or other renewable energy reliability enhancements. 
I will not vote to allow transmission lines to crisscross this state if potentially more
cost-effective and publicly acceptable alternatives are not given meaningful
consideration. The failure to consider alternatives in this case is highlighted by the
speculative nature of the company's reliability shortfall predictions.



The findings and the record as a whole support the Commission's conclusion that Brazos failed
to establish a need for its proposed transmission line. Appellant's eleventh point of error is
overruled.



C.  Arbitrary and Capricious Action

 Although agency action unsupported by substantial evidence is frequently deemed
arbitrary and capricious, "substantial evidence" and "arbitrary and capricious action" comprise
two independent grounds of review under the APA. See Starr County v. Starr Indus. Servs., Inc.,
584 S.W.2d 352, 355 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). Hence, an agency decision
may be arbitrary and capricious, even though supported by substantial evidence, if the agency
improperly bases its decision on non-statutory or legally irrelevant criteria. Lone Star, 800
S.W.2d at 929. Brazos contends in the remainder of its points of error that the Commission's
decision was arbitrary and capricious and in excess of its statutory authority because the
Commission improperly considered non-statutory criteria, of which Brazos had no notice, in
evaluating the need for Brazos's proposed transmission line. Brazos also charges that the
Commission improperly equated the private interests of landowners who would have been affected
by the proposed line with "community values." We will overrule the remainder of Brazos's points
of error.

 In points of error six, seven, and nine, Brazos attacks the following findings of
fact: (1) Brazos failed to consider the use of additional existing right-of-way owned by another
utility; (2) Brazos failed to consider alternatives to the proposed facility, such as load
management, conservation, and efficiency; and (3) Brazos used only historical data to predict
future growth, and did not review forward-looking indices of population growth or consult with
the local planning and zoning commission regarding future zoning plans for the area. Brazos
complains that these are not the statutory factors set out in PURA section 54(c).

 As we have stated, the factors set out in PURA sections 54(b) and 54(c) are merely
legislative guidelines expressed in the broadest possible terms. Public Util. Comm'n v. Texland
Elec. Co., 701 S.W.2d 261, 266 (Tex. App.--Austin 1985, writ ref'd n.r.e.). The Commission
is free to consider more specific criteria, as long as the specific criteria are reasonably related to
the broad legislative guidelines of PURA. See id. at 267-68. We will reverse the Commission's
decision as arbitrary and capricious only if the criteria applied are not reasonably related to these
guidelines.

 The supreme court has specifically noted that, although evidence of alternate routes
is not statutorily required, consideration of alternate routes using existing right-of-way relates to
the statutory criterion of need, particularly when the Commission attempts to balance need with
other statutory factors such as community values, environmental integrity, and aesthetic values. 
Goeke, 797 S.W.2d at 15 & n.3. Similarly, we have held that the Commission may properly
consider evidence, or lack thereof, regarding alternative solutions when balancing PURA criteria. 
Sam Houston Elec. Coop. v. Public Util. Comm'n, 733 S.W.2d 905, 911 (Tex. App.--Austin 1987,
writ denied). The Commission's findings that Brazos failed to consider the use of existing right-of-way or alternatives to construction were therefore proper. Moreover, the Commission did not
improperly consider the fact that Brazos used only historical data in projecting future growth. The
Pedersons introduced evidence that Brazos's estimated load projections ignored population growth
statistics and a local zoning commission plan to zone the county as an "agricultural conservation"
area, which would inhibit future growth and demand for electrical power. This dialectic cast
doubt on the reliability of Brazos's forecasts; the Commission did not err in articulating this
concern in the findings supporting its decision. See id. at 914. Brazos's sixth, seventh, and ninth
points of error are overruled.

 The Commission also noted in its findings that Brazos's environmental analyst
provided Brazos with an environmental report only on its preferred route. In its eighth point of
error, Brazos asserts this finding implies that alternate routes and environmental reports thereon
are required by the Commission for certificate applications. Brazos significantly overstates the
import of this finding. As we noted in Sam Houston Electric, an applicant is not required to
present evidence of alternate routes to meet its burden of proof under PURA section 54; however,
if a proposed route is challenged for failing to adequately consider section 54(c) criteria, the
applicant may need to consider alternatives to avoid denial of its application. 733 S.W.2d at 911. 
The Commission concluded that Brazos failed to demonstrate the need for any new transmission
facilities, including its preferred route on which an environmental report was provided. The
logical implication of the Commission's finding is not that a variety of alternate routes and
environmental reports are now required of applicants, but rather that the Commission would be
unable to fully evaluate the alternate routes proposed by Brazos in this case absent evidence
regarding the environmental integrity of those routes. This finding was directly related to the
statutory criterion of "environmental integrity" under PURA section 54(c). We have held that the
Commission is not prohibited from making findings regarding alternate routes if the findings relate
to section 54(c) factors. See id. We overrule Brazos's eighth point of error.

 In its tenth point of error, Brazos contends that the Commission's decision indicates
a preference for longer routes in order to avoid complaining landowners. The Commission
concluded that Brazos failed to demonstrate a need for any transmission facility; it did not indicate
that a longer route would be approved. Brazos's tenth point of error is without merit and is
overruled.

 In points of error two through five, Brazos complains that the Commission
improperly considered as "community values" the opposition and concerns of individual
landowners affected by the proposed line. Specifically, Brazos complains of findings of fact 35
and 36, which read:



35. Brazos did not consult with the community affected by the proposed facilities
prior to filing its CCN application.


36. The preferred route bisects cultivated land.



Brazos asserts that these findings, together with a criticism in the final order that Brazos made "an
insufficient effort to address and work with the interests of affected landowners," demonstrate that
the Commission based its decision to deny Brazos's application on the private interests of
individual landowners.

 Section 54(c) of PURA instructs the Commission to balance, among other things,
the need for additional service to the area with the effect of additional transmission lines on
community values, recreational and park areas, historical and aesthetic values, and environmental
integrity. The factors of section 54(c) compete inter se, requiring the Commission to
accommodate different policies and interests. Texland Elec. Co., 701 S.W.2d at 266. PURA
contemplates the input or intervention of affected landowners as one method of sounding these
interests. See PURA § 54(a) (West 1994). Brazos, however, seems to argue that the opinions
or concerns of these landowners are irrelevant to the Commission's consideration of "community
values." While we agree that private interests must not become the basis for the Commission's
denial of an application, we do not see how the Commission can effectively gauge community
values without considering, in the aggregate, the comments of parties affected by the transmission
lines.

 The supreme court has recognized the value of community input to the
Commission's decision-making. In Goeke, the Commission made a finding that "[w]ith regard
to community values . . . there is a general attitude supporting the preservation of the rural
landscape and lifestyle . . . ." 797 S.W.2d at 15. The court found that this language adequately
articulated the Commission's consideration of a circumstance with detrimental impact on the
community under section 54(c). Because the section 54 factors are broadly stated, the
Commission must decide what they mean in the circumstances of a particular case. Id. Brazos
proposed transmission lines bisecting agricultural property. The Pedersons testified that bisecting
a tract of land, rather than following tract boundaries, limits its uses and development. This point,
however, was only part of the Pedersons' broader argument that an unnecessary web of electrical
lines in rural areas is detrimental to the public as a whole. The Commission reiterated this
concern in its order. Without more, the finding that the proposed line bisects cultivated land does
not demonstrate an improper focus on private economic interests; it merely shows that the
Commission was sensitive to one factor of importance in an agricultural community.

 The evidence also supports the Commission's finding that Brazos failed to consult
with the community or address the interests of affected landowners. Although Brazos asserts that
this finding represents an attempt by the Commission to conceal an improper focus on damage to
property values by imposing a vague non-statutory standard, the record demonstrates otherwise. (5) 
The Pedersons' testimony revealed that Brazos's environmental report failed to include a
hydrology study and only addressed the environmental impact of the preferred route in a limited
area, not on landowners' property along the length of the line. Their testimony also highlighted
other safety and accessibility problems that could arise from transmission lines bisecting property
rather than following road frontages. In fact, in four pages of pre-filed testimony, the Pedersons
spend only four lines discussing damage to property; the overwhelming bulk of their testimony
challenges the need for and safety of the proposed facilities. The Commission's finding simply
underscores Brazos's failure to adequately address these legitimate landowner concerns.

 Brazos directs our attention to Starr County v. Starr Industrial Services, Inc., 584
S.W.2d 352 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e), and Public Utility Commission v.
South Plains Electric Cooperative, 635 S.W.2d 954 (Tex. App.--Austin 1985, writ ref'd n.r.e.),
in support of its position that the Commission improperly considered non-statutory criteria. Both
cases are distinguishable. In Starr County, the Water Quality Board denied an applicant's permit
to operate a commercial industrial solid waste management site. The Board's technical staff
worked with the applicant to draft a proposed permit that complied with all applicable regulations. 
However, several influential people at the public hearing, including the county judge and a state
senator, voiced general objections to the location of any toxic waste dump in the county. Id. at
354. The permit was denied. The Board's findings of fact cited "adamant local opposition" as
one ground for denial of the permit. The Board's executive director also wrote in a letter that the
application could be denied based on the opposition, even though the site would comply with
technical requirements. Id. Based on this evidence, this Court held that the Board's denial of the
permit was arbitrary and capricious because the statute governing award of the permit did not
mention local opposition as a criterion for awarding the permits, and therefore such opposition
could not be considered standing alone. Id. at 356.

 In South Plains, the Commission granted a certificate of convenience and necessity
to Lubbock Power & Light, a municipally-owned utility, after the City of Lubbock annexed three
new areas to the city. 635 S.W.2d at 955-56. Another utility, South Plains Electric Cooperative,
was serving the annexed areas and opposed dual certification. Although the underlying findings
of fact overwhelmingly supported South Plains's contention that it rendered and could continue
to render adequate service to the area, the Commission granted Lubbock Power & Light's
application. The Commission concluded that the public interest and community values are
promoted by allowing a municipally-owned utility to serve its citizens. Id. at 956. This Court
found that Lubbock Power & Light was given a preference not sanctioned by PURA. Id. at 957. 
We held that municipally-owned status is not a relevant statutory factor supporting an ultimate
finding of convenience and necessity and remanded the cause to the agency. Id.

 In both Starr County and South Plains the evidence revealed that the agency in
question took action based exclusively or primarily on a non-statutory criterion. The record in
the present cause reveals the opposite: Brazos failed to carry its burden to demonstrate need for
the transmission line, and proof of this need was the focus of the testimony and evidence. Even
if the Commission considered a non-statutory criterion, we may not reverse its order unless we
conclude that but for its findings on that criterion it would have issued the certificate of
convenience and necessity. See Tex. Gov't Code Ann. § 2001.174(2) (West 1994) (substantial
rights of appellant must be prejudiced before court may reverse based on improper agency action). 
The Commission's findings were reasonably related to the statutory criteria it is bound to
consider, and the record reveals that Brazos failed to meet its burden of proof under these criteria. 
Accordingly, we overrule Brazos's points of error two through five.

 Because Brazos's twelfth point of error merely summarizes the arguments in its
points of error two through eleven, we overrule it as well.



CONCLUSION


 Having overruled all Brazos's points of error, we affirm the judgment of the trial
court upholding the Commission's denial of Brazos's application for an amended certificate of
convenience and necessity.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: November 9, 1994

Do Not Publish 

1.   The Super Conducting Supercollider in Waxahachie was to be the world's largest
particle accelerator to support nuclear fusion research. Congress aborted the project in
October 1993.
2.   Tex. Gov't Code Ann. § 2001.174 (West 1994). All citations in this opinion are to
the current Administrative Procedure Act ("APA") rather than the former Administrative
Procedure and Texas Register Act because the recent recodification did not substantively
change the law.
3.   The APA also authorizes judicial reversal of an agency's decision if substantial
rights of the appellant have been prejudiced because the agency's decision is: (1) in
violation of a statute or constitutional provision; (2) in excess of the agency's statutory
authority; (3) made through unlawful procedure; or (4) affected by other error of law. 
Tex. Gov't Code Ann. § 2001.174(2)(A)-(D) (West 1994).
4.   The relevant provisions of PURA sections 54(b) and 54(c) read:


Sec. 54(b)  Except for certificates for prior operations granted under Section
53, the commission may grant applications and issue certificates only if the
commission finds that the certificate is necessary for the service,
accommodation, convenience, or safety of the public. 

. . .


(c)  Certificates of convenience and necessity shall be granted on a
nondiscriminatory basis after consideration by the commission of the
adequacy of existing service, the need for additional service, the effect of the
granting of a certificate on the recipient of the certificate and on any public
utility of the same kind already serving the proximate area, and on such
factors as community values, recreational and park areas, historical and
aesthetic values, environmental integrity, and the probable improvement of
service or lowering of cost to consumers in such area resulting from the
granting of such certificate.
5.   Interestingly, Brazos bases much of its argument on statements made by the
Commission's staff witness, who actually recommended approval of Brazos's application.