**ENTERGY GULF STATES, INC., Appellant,**

v.

**Nicholas TRAXLER, Appellee.**

No. 09–09–00362–CV.

Court of Appeals of Texas, Beaumont.

Submitted May 6, 2010.

Decided Aug. 19, 2010.

Jacqueline M. Stroh, Crofts & Callaway, San Antonio, Paul A. Scheurich, Christine S. Kibbe, Beaumont, for Appellant.

Jane S. Leger, Provost Umphrey Law Firm, Beaumont, for Appellee.

Before McKEITHEN, C.J.,
GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an appeal from a judgment in favor of the plaintiff in a personal injury case. We reverse the trial court's judgment and render judgment that appellee take nothing.

Appellee Nicholas Traxler sued appellant Entergy Gulf States, Inc. ("Entergy") for personal injuries Traxler allegedly sustained when, while riding on top of a house that was being moved along a street in Bridge City, Texas, he made contact with a power line and fell from the top of the house. Traxler asserted causes of action for general negligence and negligence *per se*. Specifically, Traxler complained that Entergy was negligent *per se* because it violated section 181.045 of the Texas Utilities Code, that Entergy was negligent "in the construction, maintenance[,] and inspection of its line and pole" and that Entergy was "negligent in its instructions to local home movers." *See* Tex. Util. Code Ann. § 181.045 (Vernon 2007). Traxler did not assert that Entergy failed to properly warn of the known potential danger, and in his appellate brief, Traxler asserts that because "Entergy's liability is not based on a failure to warn[,] . . . Entergy's assertion [on appeal] that it has no duty to warn of known dangers is irrelevant to any issue in this case."

1. Traxler reached a settlement with Burkhart House Moving Company prior to trial, and the trial court signed a partial final judgment that Traxler recover nothing from Burkhart House Moving Company.

2. Traxler's accident occurred on June 22, 2005. Section 181.045(b) of the Texas Utilities Code became effective on September 1, 1997. Tex. Util.Code Ann § 181.045(b) (Ver-

The trial court submitted the general negligence and negligence *per se* theories to the jury in a single broad-form question. The jury found that Entergy was negligent; assigned 44% of the responsibility for the accident to Entergy, 46% to Traxler's employer, Burkhart House Moving Company,[1] and 10% to Traxler. The trial court signed a final judgment awarding Traxler damages in accordance with the verdict. Entergy then filed this appeal, in which it raises ten issues for our consideration. We reverse the trial court's judgment and render judgment that Traxler take nothing.

## ISSUE ONE

■ In its first issue, Entergy argues that it had no duty to Traxler to maintain the electrical line at issue at a height of twenty-two feet. *See id.* Specifically, Entergy asserts that section 181.045(b) only applies to transmission lines that cross state highways and county roads, not to distribution lines that cross municipal streets. In response, Traxler contends that "[t]he only limitation recognized by Texas courts on what constitutes a 'transmission line' under Section 181.045 and its predecessors is that the line has to carry electricity."

In this case, the trial court instructed the jury that section 1436a of the Texas Revised Civil Statutes, which is the predecessor of section 181.045(b)(2), applied to the jury's determination of whether Entergy was negligent.[2] Both section

non 2007). Therefore, assuming that the date of Traxler's accident governs rather than the date Entergy installed the line, the trial court's instruction to the jury that section 1436a applied to its determination of whether Entergy was negligent was incorrect. However, because the two statutes contained identical requirements, any error was of no consequence.

181.045(b)(2) and section 1436a require that where a transmission line crosses a highway or road, the transmission line must be at least twenty-two feet above the surface of the traffic lane. *Id.* § 181.045(b)(2) ("[A]n electric utility shall: . . . (2) construct a transmission line that crosses a highway or road so that the line is at least 22 feet above the surface of the traffic lane[.]"); Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 22(9) (current version at TEX. UTIL.CODE ANN. § 181.045 (Vernon 2007)) ("[A]t any place where a transmission line crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane[.]").

In chapter 25 of the Texas Administrative Code, which contains Public Utility Commission rules applicable to electric service, "distribution line" and "transmission line" are defined separately. 16 TEX. ADMIN. CODE § 25.5(31), (140) (2010). "Distribution line" is defined as "[a] power line operated below 60,000 volts, when measured phase-to-phase, that is owned by an electric utility. . . ." *Id.* § 25.5(31). "Transmission line" is defined as "[a] power line that is operated at 60 kilovolts (kV) or above, when measured phase-to-phase." *Id.* § 25.5(140). In chapter 23 of the Texas Administrative Code, which was repealed and moved into chapter 25 in 1998, the statute defined "transmission lines" as "[t]hose lines which are used for bulk transmission of . . . electricity . . . which are not normally used for serving the end user. For electric utilities, this includes all lines operated at 60,000 volts or above, when measured phase-to-phase." *Sam Houston Elec. Coop., Inc. v. Pub. Util. Comm'n of Tex.*, 733 S.W.2d 905, 909 (Tex. App.-Austin 1987, writ denied) (quoting 16 TEX. ADMIN. CODE § 23.31(a)(1)). In addition, chapter 23 of the Texas Administrative Code separately defined "distribution lines" as "[t]hose lines from which the end

user may be provided direct service." *Id.* (quoting 16 TEX. ADMIN. CODE ANN. § 23.31(a)(3)).

The evidence adduced at trial indicated that the line in question is a distribution line, not a transmission line. As support for his contention that the twenty-two-foot height requirement applied to the electrical line at issue, Traxler relies principally upon three cases from sister courts of appeals: *Lamb County Elec. Co-op. v. Cockrell*, 414 S.W.2d 228, 230 (Tex.Civ. App.-Amarillo 1967, writ ref'd n.r.e.); *Tex. Power & Light Co. v. Holder*, 385 S.W.2d 873 (Tex.Civ.App.-Tyler 1964, writ ref'd n.r.e.); and *Tex. Power & Light Co. v. Jacobs*, 323 S.W.2d 483, 491 (Tex.Civ.App.-Waco 1959, writ ref'd n.r.e.).

In *Jacobs*, the plaintiff was injured when he came into contact with an electrical wire that crossed a public road, and the trial court determined that the power company was guilty of negligence *per se* because its line was less than twenty-two feet above the surface of the traffic lane. *Jacobs*, 323 S.W.2d at 485, 490. The court of appeals noted that article 1436 required public utilities to construct and maintain their lines at a height of at least twenty-two feet above the ground, and that article 1436a required transmission lines that cross a highway or road to be at least twenty-two feet above the surface of the traffic lane. *Id.* at 490–91. When the legislature enacted section 1436a in 1949, the statute discussed corporations engaged in "the generation, transmission[,] and/or the distribution of electric energy[,]" and it required that "at any place where a transmission line crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane." Act of May 19, 1949, 51st Leg., R.S., ch. 228, § 1, 1949 Tex. Gen. Laws 427 (current version at TEX. UTIL.CODE ANN. § 181.045 (Vernon 2007)). In construing sections 1436 and

1436a together, the *Jacobs* court held as follows:

> Article 1436a aforesaid does not specifically repeal Article 1436 aforesaid. We think the effect of that statute is to make it a little more specific in that it does provide that at any place where a transmission line crosses a highway or road it shall be at least 22 feet above the surface of the traffic lane. Our view is that the mere designation of the electric line carrying the current from the source to the customer, a transmission line, and the designation of the line returning the current from the customer to the source as a distribution line does not prevent the line carrying the return current from being a transmission line for all practical purposes.... [T]he words 'the transmission lines' as used in the statutes mean any lines used to transmit electricity and not just those which are a part of the power or transmission system. We think this view is sustained by the rule, that the policy of the Courts is to avoid giving statutory words a technical meaning[.]

*Id.* at 491.

■ At the outset, we note that, in addition to the rule of construction cited in *Jacobs*, the Code Construction Act further provides that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2005); *see also* TEX. GOV'T CODE ANN. § 312.002(a), (b) (Vernon 2005) (Words shall be given their ordinary meaning, but "if a word is connected with and used with reference to a particular trade or subject matter or is used as a word of art, the word shall have the meaning given by experts in the particular trade, subject matter, or art."); *Jacobs*, 323 S.W.2d at 491. In addition, we note that the *Jacobs*

court did not discuss or acknowledge the definitions of "transmission line" and "distribution line" contained in the Texas Administrative Code, so we must assume either that the parties in *Jacobs* did not rely on those definitions, or that said definitions did not exist in 1959 when the *Jacobs* opinion was issued. Furthermore, the opinions of a sister court of appeals are not binding precedent in other courts of appeals. *Mitchell v. John Wiesner, Inc.,* 923 S.W.2d 262, 264 (Tex.App.-Beaumont 1996, no writ). Finally, the Texas Utilities Code no longer contains a general twenty-two-foot height requirement like the one in former article 1436; instead, only the more specific requirement as set forth in article 1436a remains. *See* TEX. UTIL.CODE ANN. § 181.045(b)(2).

In addition, *Cockrell*, which was also decided by a sister court of appeals, is distinguishable. In *Cockrell*, the plaintiff contended that the defendant was negligent because it failed to comply with the twenty-two-foot height requirement contained in section 1436a. *Cockrell*, 414 S.W.2d at 229. The *Cockrell* court held that the term "line or lines" "has reference only to lines carrying electric current[,]" and noted that the plaintiff failed to introduce evidence that the line carried any electric current. *Id.* at 230–31 (distinguishing *Jacobs* on that basis). *Cockrell* does not stand for the proposition that "transmission line" means any line that carries electric current; therefore, it is inapposite to the issue presented here. *See Cockrell,* 414 S.W.2d at 230–31.

In *Holder*, the court adopted the *Jacobs* court's holding in construing articles 1436 and 1436a, concluding that article 1436a did not repeal article 1436, and determining that the twenty-two-foot height requirement applied to the line in question. *See Holder*, 385 S.W.2d at 881. Because we reject the reasoning of the *Jacobs* court

and its construction of the term "distribution line," we likewise reject *Holder*, which relied upon *Jacobs*.

■ For all of the above reasons, we decline to adopt the construction of the term "transmission line" espoused by the *Jacobs* court. Instead, we hold that the term "transmission line," as used by the Legislature in section 181.045(b)(2) of the Texas Utilities Code (as well as its predecessor, section 1436a of the Texas Revised Civil Statutes) has the technical meaning assigned to it by the applicable Public Utility Commission regulation: a power line that is operated at 60 kilovolts (kV) or above, when measured phase-to-phase. *See* TEX. ADMIN. CODE § 25.5(140); *see also* TEX. UTIL.CODE ANN. § 181.045(b)(2); Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 22(9) (current version at TEX. UTIL.CODE ANN. § 181.045 (Vernon 2007)). Because the evidence adduced at trial established that the line Traxler contacted was a distribution line, we hold that Entergy therefore owed no duty to Traxler under section 181.045(b)(2) or section 1436 to maintain the line at a height of twenty-two feet or more above the surface of the traffic lane. *See* TEX. UTIL.CODE ANN. § 181.045(b)(2); Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 22(9) (current version at TEX. UTIL. CODE ANN. § 181.045 (Vernon 2007)). We sustain issue one.

## ISSUE TWO

■ In its second issue, Entergy argues that it owed no duty to Traxler under chapter 752 of the Texas Health and Safety Code. In response, Traxler asserts that at a meeting between Entergy and Burkhart, Entergy's representative, Kyle Todd, informed Burkhart and other movers that they need not contact Entergy unless the structure that was to be transported was more than seventeen feet tall. Specifically, Traxler argues in his brief that Todd

"told the movers, in effect, that they could ignore the law[.]"

Section 752.003(a) of the Texas Health and Safety Code requires that any person, firm, corporation, or association responsible for temporary activity or work closer to a high-voltage overhead line than "the distances prescribed by this chapter" to notify the operator of the line at least forty-eight hours before the work or activity begins. TEX. HEALTH & SAFETY CODE ANN. § 752.003(a) (Vernon 2010). In addition, section 752.003(b) provides that work or activity may not begin until the person or entity responsible for the work has negotiated with the operator of the line to "provide temporary de-energization and grounding, temporary relocation or raising of the line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment or the person performing the work, activity, or function." *Id.* § 752.003(b) (Vernon 2010). Unless the person or entity responsible for the work has guarded against the danger of contacting the line as set forth in section 752.003, the work, function, or activity may not be performed if it is possible that the person doing the work, function, or activity may "(1) move or be placed within six feet of a high voltage overhead line while performing the function or activity; or (2) bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity." *Id.* § 752.004(a) (Vernon 2010).

In addition, "[a] person, firm, corporation, or association may not require an employee to perform a function or activity prohibited by Subsection (a)." *Id.* § 752.004(b) (Vernon 2010). Section 752.005 provides that unless the person or entity effectively *guards against danger* as prescribed by section 752.003, the person or entity may not transport all or any part

of a house, building, or other structure within six feet of a high voltage overhead line. *Id.* § 752.005(1) (Vernon 2010). Furthermore, section 752.008 provides that if a violation of chapter 752 results in contact with a high voltage overhead line, the person or entity that committed the violation "is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator incurs as a result of the contact." *Id.* § 752.008 (Vernon 2010).

■ Nothing in chapter 752 imposes a duty upon the owner or operator of a power line to insure that persons or entities performing work, functions, or activities within six feet of power lines comply with the requirements of that chapter. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.001–.008 (Vernon 2010). Rather, chapter 752 imposes duties upon persons or entities performing work, functions, or activities within six feet of power lines. *See id.* We therefore turn to the issue of whether Kyle Todd's meeting with Burkhart and other movers created an otherwise non-existent duty on the part of Entergy to ensure that Burkhart complied with the requirements of chapter 752.

At trial, Henry Burkhart, the owner of Burkhart House Moving Company, testified that as the result of a meeting between various house movers (including himself) and Entergy's representative, Kyle Todd, Burkhart believed that if a house was seventeen feet tall or less, he need not contact Entergy. Burkhart explained that he did not contact Entergy concerning the move during which Traxler was injured. According to Burkhart, the structure he intended to move was sixteen feet, ten inches tall.

During cross-examination, Burkhart testified that when he spoke with Todd, Todd told Burkhart and the other movers to use their judgment as to whether a particular electrical line might cause a problem, and to call Entergy if there was a problem. In addition, Burkhart explained that Todd told him that if Burkhart contacted Entergy, Entergy would send someone to assess the situation, even if the structure to be moved was below seventeen feet. Burkhart also testified that Entergy told him that he was responsible for determining whether a particular Entergy wire posed a potential problem for the move. Burkhart testified that he was responsible for providing a safe workplace for Traxler. Furthermore, Burkhart testified that he warned Traxler about the wire at issue and instructed Traxler to get down and to avoid the wire.

Kyle Todd testified that when he met with the house movers, he was unaware that the movers were putting people on top of the houses that were being moved, and that they did not discuss that practice at the meeting. According to Todd, the purpose of the meeting was to tell the movers how to contact Entergy because the movers were frustrated with Entergy's automated voice response unit. Todd testified that he told the movers "they should call [Entergy] if they feel that there is a concern. They make the decision if it's unsafe. They are supposed to follow the law[.]" According to Todd, the discussion about a height of seventeen feet resulted from "talking about a Department of Transportation requirement." Todd explained that "[a]nything ... around 17 [feet] it is [the movers'] decision to ... tell me if they ... feel that it's unsafe, to call me and we will change the parameters of the line." "[I]t is really the ... home mover's decision to call me if they have a problem." Todd testified, "I told them 17 is a good number. Below 17, if they have a problem, if they think they're uncomfortable with that, please call me. But over 17, be sure to call me."

■ Generally, one is under no legal duty to control the conduct of others, even if one has the practical ability to do so. *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex.2006). However, a person or entity may choose to undertake such a duty, and if it does so negligently, will be held liable. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837–38 (Tex. 2000). In *Stutzman*, the Texas Supreme Court explained that in negligent undertaking cases, the jury must be instructed concerning the elements of negligent undertaking, which are as follows: (1) the defendant undertook to perform services that it knew or should have known were necessary to protect the plaintiff, (2) the defendant failed to exercise reasonable care, and either (3) the party to whom the duty is owed relied on the defendant's undertaking, or (4) the defendant's performance of its undertaking increased the plaintiff's risk of harm. *Id.* at 839. The evidence concerning the meeting between Todd and Burkhart, as well as Entergy's policy with respect to when calls to it were necessary, does not establish that Entergy undertook to perform services that it knew or should have known were necessary to protect Traxler, or that Entergy failed to exercise reasonable care. *See id.* Absent such evidence of an undertaking, Entergy owed no duty to Traxler; therefore, Traxler failed to establish the elements of negligence. *See Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993) (Without a legally cognizable duty, a defendant cannot be held liable in tort.). We sustain issue two. We need not address issues three through ten, as they would not result in greater relief. We reverse the trial court's judgment and render judgment that Traxler take nothing from Entergy.

REVERSED AND RENDERED.