Charles GOEKE, et. al., Petitioners,

v.

**HOUSTON LIGHTING & POWER COMPANY, Respondent.**

No. C–8363.

Supreme Court of Texas.

Sept. 12, 1990.

Rehearing Overruled Nov. 14, 1990.

J. Bruce Bennett, Jeffery L. Hart, Austin, for petitioners.

Robert J. Hearon, Jr., Thomas B. Hudson, Jr., Austin, Hugh Rice Kelly, George W. Schalles, III, Houston, for respondent.

## OPINION

MAUZY, Justice.

This is an administrative appeal involving the requirement for agency fact-findings as set forth in section 16(b) of the Administrative Procedure and Texas Register Act (APTRA). The trial court reversed a final order of the Public Utility Commission (Commission) on the ground that it had not met the requirements of section 16(b). The trial court remanded the case to the agency. The court of appeals affirmed the trial court's judgment. 761 S.W.2d 835. We reverse the judgment of the court of appeals and remand this cause to the trial court.

In 1983, Houston Lighting & Power Company (HL & P) filed with the Commission an application to amend its certificate of convenience and necessity in order to build a high-voltage transmission line and substation. The proposed amendment would allow the company to construct a high-voltage transmission line in an area 100 to 150 feet wide and 46 miles long, across the Texas counties of Harris, Waller, Austin and Washington.[1] Charles Goeke and some 700 other residents in three of the counties (Waller, Austin, and Washington) intervened in the proceedings before the Commission to oppose certification of HL & P's proposed line. Petitioners, known in the proceedings as the Goeke Group, opposed certification of the proposed line on the grounds that it was unnecessary and that HL & P had failed to utilize the existing corridors and rights-of-way in the area.

---

**1.** Initially, HL & P's primary purpose of the proposed line was to import power from Austin and San Antonio to Houston, an area experiencing rapid growth in population at the time. HL & P allowed its contracts for electricity with the cities of Austin and San Antonio to expire at the end of 1987. HL & P has also stated that it intended to use the line as a connection to proposed power plants. HL & P has since canceled two of its three proposed projects. During oral argument before this court, HL & P stated that it still intends to construct the line to provide a reserve to its existing circuits.

The Commission[2] denied HL & P's amended certificate and stated as follows in its order:

2. Houston Lighting and Power Company failed to meet its burden of proving that the need for the proposed Salem–Zenith line outweighs the detrimental impact of the proposed route on the factors set forth in Section 54(c) of the Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c (Vernon Supp.1986). Specifically, Houston Lighting and Power Company failed to present sufficient credible evidence to enable the Commission to weigh and make findings regarding the need for the line against the potential negative effects on the Section 54(c) criteria caused by the proposed route, especially in light of the concerns raised by the intervenors.

3. The Company failed to prove the sufficiency of the routing selection methodology which led to the selection of the proposed route in that it failed to convince the Commission that the methodology employed adequately considered alternative routes using existing rights-of-way and/or parallel lines.

The district court reversed the Commission's decision, holding that APTRA section 16(b) required the agency to supply findings of underlying fact. The trial court ordered a general remand to the Commission, stating:

Because of the lack of findings required by law, the court cannot and has not reached any other issue raised by [HL & P], including whether the Commission applied a proper legal standard, whether the order is supported by substantial evidence, or whether the evidence compels granting the permit.

The court of appeals affirmed the trial court's judgment. It held that paragraph two of the Commission's order constituted a finding of fact on statutory criteria but that paragraph three of the order represented an attempted finding of underlying fact that was inadequate under section 16(b). 761 S.W.2d at 843. We reverse the judgment of the court of appeals and hold that the Commission issued a valid final order that is subject to judicial review.

■ The Public Utility Regulatory Act (PURA) sets forth the statutory criteria that the Commission must consider in deciding whether to grant a certificate of convenience and necessity. Tex.Rev.Civ. Stat.Ann. art. 1446c (Vernon Supp.1990). Section 54(b) of PURA provides that the Commission may grant a certificate if it finds that the certificate is "necessary for the service, accommodation, convenience, or safety of the public." Section 54(c) further requires that, in making its decision, the Commission must consider

the adequacy of existing service, the need for additional service, the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and on such factors as community values, environmental integrity, and the probable improvement of service or lowering of cost to consumers in such area resulting from the granting of such certificate.

On its face, the Commission's order makes clear that it was considering and addressing the statutory criteria. Paragraph two addresses the need for the transmission line. Necessity is a statutory criteria, but it is not the only criteria. So, paragraph two refers to the other section 54(c) criteria and finds that HL & P failed to carry its burden of proving that the need outweighed the potential negative effects on these other criteria which include such considerations as community values and environmental integrity. Thus, the agency did what it was supposed to do in that it made a decision within its delegated authority based on the statutory criteria.

■ The next question is whether the agency supported its statutory findings

---

2. Commissioner Rossen concurred in the order of denial and in the reasons for denial; she dissented however from the adoption of findings that there was a need for additional power transfer capacity. Commissioner Campbell dissented from the order of denial itself on the ground that it was impermissible for the Commission to base a decision on the utility's failure to consider alternative routes.

with a statement of the underlying facts as is required by section 16(b) of APTRA. There is no precise form for an agency's articulation of underlying facts, and courts will not subject an agency's order to some "hypertechnical standard of review." *State Banking Board v. Allied Bank Marble Falls*, 748 S.W.2d 447, 449 (Tex.1988). What is important is that the findings serve the overall purpose evident in the requirement that they be made—i.e., they should inform the parties and the courts of the basis for the agency's decision so that the parties may intelligently prepare an appeal and so that the courts may properly exercise their function of review. *See Texas Health Facilities Comm'n v. Charter Medical—Dallas*, 665 S.W.2d 446, 451–452 (Tex.1984). We have also articulated the following more specific guidelines for underlying findings: (1) they must be more than mere recitals of testimony; (2) they should be stated as the agency's findings; and (3) they should relate to the ultimate statutory findings. *Charter Medical—Dallas*, 665 S.W.2d at 452. These guidelines are reflective of the types of abuses with which the courts have been concerned.

In this case, paragraph three of the Commission's order provides an articulation of underlying fact; it represents the Commission's attempt to further explain why it found against HL & P when it balanced the statutory need versus burden criteria. What paragraph three finds is that HL & P failed to demonstrate that it had adequately considered "alternative routes using existing rights-of-way and/or parallel lines." This finding obviously relates to the statutory criteria of need. For example, if HL & P had shown that the use of existing rights-of-way was not feasible, then perhaps the Commission would have considered the line as routed in HL & P's proposal to be more of a necessity. Thus,

paragraph three articulates the Commission's underlying finding as to why HL & P had failed to convince the Commission that the need for its proposed line was great enough to outweigh the negative effects on other statutory criteria.[3] Moreover, the Commission made the following additional underlying finding:

> With regard to community values in the area of the proposed transmission line, there is a general attitude supporting the preservation of the rural landscape and lifestyle and maintaining historic structures and features.

This underlying finding relates to the possible detrimental impact on the section 54(c) criteria. Thus, the Commission articulated underlying findings that are addressed to both sides of the balance; these findings serve the purpose of showing us what the agency was thinking when it weighed that balance and decided that the need for HL & P's proposed line did not outweigh the detrimental impact. They are not mere recitals of testimony, but instead show the basis for the agency's decision. More is not required. The agency has made its decision and has provided findings sufficient to show its reasoning process and to allow for judicial review.

We therefore hold that the Commission's final order satisfied the requirements of section 16(b) of APTRA. We reverse the judgment of the court of appeals and remand this cause to the trial court for full judicial review in accordance with section 19(e) of APTRA.

GONZALEZ, J., dissents with opinion.

COOK, J., not sitting.

GONZALEZ, Justice, dissenting.

This is another example of the judiciary having to wrestle with an equivocal decision of the Public Utility Commission.[1]

---

3. This does not mean that HL & P was required to show that it considered alternative routes. *See Frost v. Public Utility Commission*, 672 S.W.2d 883 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (recognizing that section 54(c) of PURA does not require evidence of alternative routes). However, although such evidence is not statutorily required, a utility may nevertheless need to present such evidence when it bears on other statutory factors such as community values, aesthetic values, and environmental integrity. *See Sam Houston Elec. Co-op v. Public Utility Commission*, 733 S.W.2d 905, 911 (Tex.App.—Austin 1987, writ denied).

1. For another example, see *Coalition of Cities For Affordable Utility Rates v. Public Utility*

The Commission has evaded its statutory responsibility of rendering a straightforward decision in the regulation of monopolies.[2] In my opinion, the order of the Commission is so vague and indefinite that it eludes meaningful judicial review. Thus, I would affirm the trial court's judgment to remand to the Commission with instructions to allow the parties to update the record and direct the Commission to render a clear, unequivocal decision.

This case began in 1983 when Houston Lighting & Power (HL & P) filed with the Commission an application for a certificate of convenience and necessity for a transmission line and a substation. About 700 residents affected by the proposed line intervened to oppose the line. After a lengthy hearing in February 1987, the Commission denied the certificate *and split three ways as to their reasons*. After some recitals adopting the examiner's report and some findings of fact and conclusions of law[3] the order, in pertinent part, reads as follows:

1. The application of Houston Lighting and Power Company for the proposed Salem–Zenith transmission line and associated substation is DENIED.

2. Houston Lighting and Power Company failed to meet its burden of proving that the need for the proposed Salem–Zenith line outweighs the detrimental impact of the proposed route on the factors set forth in Section 54(c) of the Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c (Vernon Supp.1986). **Specifically,** Houston Lighting and Power Company failed to present sufficient credible evidence **to enable the Commission to weigh and make findings regarding the need for the line against the potential negative effects** on the Section 54(c) criteria caused by the proposed

route, especially in light of the concerns raised by the intervenors.

3. The Company failed to prove the sufficiency of the routing selection methodology which led to the selection of the proposed route in that it **failed to convince the Commission** that the methodology adequately considered alternative routes using existing rights-of-way and/or parallel lines.

4. Motions and requests for relief not expressly granted by the Commission are DENIED for want of merit.

SIGNED:

DENNIS L. THOMAS

(Emphasis added).

Commissioner Peggy Rosson issued the following opinion:

I strongly concur in the denial of this application and agree with Commissioner Thomas' reasons for that decision as set forth above. In addition to the problems with routing, I further believe that the testimony and load flow studies produced by Houston Lighting and Power Company in this proceeding **fail to support the purported need for this line.** The application of the Company states that the reason for this line is to facilitate importation of power under contract from the Cities of Austin and San Antonio; the load flow studies presented in this docket were premised on that assumption. The record reflects that it is unlikely that Houston Lighting and Power company will import such power, however. Thus, the load studies which are in the record cannot be relied upon by this Commission to support a finding of need. The load flow studies are also woefully out of date. The second reason given by Houston Lighting and Power Company in support of the need for the line is that it would be used to transmit power from

---

*Commission of Texas,* 798 S.W.2d 560 (Tex. 1990).

2. Normal market forces of competition which operate to regulate prices in a free enterprise society do not operate when the utility company is the only game in town. Therefore, the legislature passed a regulatory scheme to operate as a substitute for such competition to assure that

the rates and services will be just and reasonable. *See* Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 2–101 (Vernon Supp.1990).

3. Commissioner Thomas adopted findings of facts 1–17, 20, 21, and 29–32, and conclusions of law nos. 1–5. These findings are appended to this dissent.

the Company's Limestone Generating Plant. It is undisputed, however, that this line alone could not be used to bring power from Limestone as the other facilities necessary to carry Limestone power do not exist.

Therefore, I dissent from the adoption of Findings of Fact Nos. 12, 13, 15, 16, 30–32.

SIGNED:

_____

PEGGY ROSSON

(Emphasis added).

The order concluded with Commissioner Jo Campbell's dissent:

I respectfully dissent. I simply do not understand Ordering Paragraph No. 2, since the transcripts of the meetings where this case was considered show unequivocally that a majority found a need for the line. In fact, when this case was remanded to the Examiner, the majority stated that the need for the line was not to be further litigated. Neither has a majority found that the proposed route violated any of the criteria enunciated in § 54(c). The sole issue has always been whether applicant properly considered alternative routes. The transcript shows that it was applicant's failure to make this showing which formed the basis for the denial of the application. I believe this is an impermissible standard for denial of the application under the Court's holding in *Frost v. Public Utility Commission*, 672 S.W.2d 883 (Tex.App.— Austin 1984, writ ref'd n.r.e.).

SIGNED:

_____

JO CAMPBELL

The only thing that we can be sure of is that the Commission denied the certificate and that the basis for the denial is subject to various interpretations. We can say with certainty that two of the Commissioners agreed that the application should be denied, and agreed that certain findings of the Examiners' Reports be adopted.[4] More

importantly, on the central issue, they agreed that *they were unable to weigh or balance* the beneficial and detrimental effects under Section 54(c) of the Public Utility Regulatory Act (PURA)[5] and that HL & P failed to show that it adequately considered alternative routes. The remaining Commissioner dissented because in her view, need had been established, and the failure to consider alternative routes was not a proper consideration upon which to deny the application.

The order of the Commission purports to decide whether to issue a certificate of necessity and convenience under Section 54 of PURA. Section 54 of the act is the only basis for rejecting or accepting the application. Section 54(b) provides that an application may be granted "only if the commission finds that the certificate is necessary for the service, accommodation, convenience, or safety of the public." Section 54(c) provides:

Certificates of convenience and necessity shall be granted on a nondiscriminatory basis after consideration by the Commission of the adequacy of existing service, the need for additional service, the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and on such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers in such area resulting from the granting of such certificate.

Today, the court depicts paragraph two of the Commission's order as a decision that HL & P failed to carry the burden to show that the need for the line outweighs the negative effects under section 54(c) criteria. The court further characterizes paragraph three of the order as a finding of underlying facts required by section

_____

4. It is strange for Commissioner Rosson to concur with Commissioner Thomas' reasons for the denial and yet dissent from his opinion as to what findings of fact should be adopted.

5. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 54(c) (Vernon Supp.1990).

16(b) of APTRA.[6] Yet paragraph two of the Commission's order is an unequivocal statement that the record is not sufficient *"to enable* the Commission to weigh and *make findings* regarding the need for the line against the potential negative effects on the Section 54(c) criteria." I do not see how this statement, that the Commission was unable to make Section 54(c) findings, and the court's conclusion that the Commission really did make such findings, can be reconciled.

If, instead, the Commission's order had decided that need was outweighed by detriment and that there was inadequate consideration of alternative routes, then the order would be reviewable. Then the questions would be whether consideration of alternative routes is an acceptable section 54(c) criterion and, if so, whether there was substantial evidence to support the finding. Because the order states that the Commission was unable to decide the only relevant inquiry, I would uphold the trial court's decision to remand the case to the Commission, where it can then render a decision balancing need versus detriment considering "such factors as" those listed in section 54(c).

The Commission did not discharge its statutory duty of making a straightforward decision. When faced with the difficult decision of balancing the public's interest with the interest of the utility company, regulatory agencies should not equivocate, dodge, hedge or defer making a decision. They should not be able to throw their hands up in the air and issue vague orders that are subject to various interpretations. Nobody wins when they engage in such conduct except the lawyers. I do not believe that this is what the legislature had in mind when they passed 16(b) of APTRA and 54(c) of PURA. In order to save judicial resources, and not burden the parties with the cost of litigation, the Commission should decide cases before them in a straightforward manner based on the record before them. *See generally Coalition of Cities for Affordable Rates v. PUC,* 798 S.W.2d 560. Since the law in this regard has now been clarified, the parties should be sent back to the Commission so that this matter can be properly disposed of under the new rules set forth in *Coalition of Cities for Affordable Rates.*

Therefore, it makes no sense to remand this stale record[7] to the trial court for a substantial evidence review. Since paragraphs 2 and 3 of the Commission's order are in irreconcilable conflict, I would affirm the trial court's remand to the PUC with instructions to allow the parties to update the record and direct the Commission to make a straightforward decision.

## APPENDIX

### A. *Findings of Fact*

1. On August 8, 1983, Houston Lighting and Power Company filed an application for a certificate of convenience and necessity for a transmission line and an associated substation. The requested transmission line would consist of two 3-phase, 345 kv, 1300 MVA circuits, connecting the proposed HL & P substation, Zenith, in northwest Harris County, to the LCRA Salem substation southwest of Brenham in Washington County.

---

6. The language in paragraph 3 is not a "finding of fact." A "finding" is a decision or determination of a disputed fact made by a tribunal or jury based on the evidence. The disputed fact here was whether the need for the line outweighs the negative effects on the public. On this core issue, the Commission states that they were unable to make a decision.

If administrative agencies could have hung juries, it could be said that the Commission was "hung" because they are irreconcilably divided in opinion that they could not reach a decision. However, administrative agencies can not have hung juries. They have to make unequivocal decisions; vote up or down, yes or no. No "maybe" and no "we are unable to decide." Furthermore, if they cannot decide on the facts, then the order has no foundation.

7. Both sides conceded during oral argument that the record is stale. New studies will have to be made so that the commission can perform its § 54 duties in light of current data and in conformance with the new rules announced in *Coalition of Cities v. PUC,* 798 S.W.2d 560 (Tex. 1990).

2. HL & P published notice of its application and provided proof of publication to the Commission.

3. Over 700 residents of the area of the proposed transmission line and substation have protested the application and intervened in the proceedings.

4. A hearing on the merits was held on the application from January 16 through January 19, 1984. Public comments were heard by the presiding examiner in an open meeting on January 23, 1984. The hearing continued on February 21 through February 29, 1984, and was completed on March 5, 1984.

5. The proposed line would be about 46.5 miles long and would traverse Harris, Waller, Austin, and Washington counties.

6. From Zenith to the Peters Corner area, the proposed line would be installed on vertical tangent towers 135 feet tall and would require a 100 foot wide right-of-way. This segment of the route is about 24 miles long. For the remainder of the route, from Peters Corner to the Salem substation, the line would be installed on delta type structures 121 feet tall and would require a 150 foot wide right-of-way.

7. HL & P previously acquired about 17 percent of the proposed right-of-way for the line.

8. The total estimated cost of the project is about $34,223,000.

9. HL & P and LCRA entered into a contract under which HL & P advanced LCRA the money necessary to upgrade to 345 kv, by June 1984, the existing transmission lines from LCRA's Fayette Power Plant and Fayetteville substation to its Salem substation.

10. By connecting HL & P's Zenith substation to the LCRA system at Salem, the proposed line would complete a direct link in the bulk power transmission system between the Austrop substation in Travis County and the HL & P system in Harris County. The Salem–Zenith line would be linked to the Lytton substation between Austin and San Antonio.

11. The Salem–Zenith transmission line would increase HL & P's power transfer capacity to and from other members of South ERCOT by an average of over 80 percent during the 1985–87 period:

| Year | Transfer Capacity w/o Salem–Zenith (MW) | Transfer Capacity w/Salem–Zenith (MW) | Difference (MW) |
|------|------|------|------|
| 1985 | 900 | 1300 | 400 |
| 1986 | 850 | 1800 | 950 |
| 1987 | 1050 | 2000 | 950 |

12. It is necessary for the reasonable and prudent operation of the HL & P system to maintain at least 1,200 MW of power transfer capacity of 345 kv bulk power transmission lines between HL & P and the other members of South ERCOT.

13. HL & P's need for additional bulk power transfer capacity for contingency conditions is not related to the amount of cogeneration capacity available within its system.

14. Construction of the Salem–Zenith line would reduce wheeling charges and losses paid by HL & P to other systems by about $1,190,000 and energy losses by about $2,060,000 to $4,460,000 during the 1985–87 period. Energy losses related to remote generation would be reduced about $1.5 million a year after 1987.

15. When the Limestone Power Plant Units I and II are on line, additional 345 kv transmission capacity must be available to reliably transport the units' output to the HL & P system.

16. In 1987, the Salem–Zenith line would transmit a substantial amount of the power from Limestone under normal conditions and almost 600 MW of that power in the event of a Singleton tower outage.

17. With regard to community values in the area of the proposed transmission line, there is a general attitude supporting the preservation of the rural landscape and lifestyle and maintaining historic structures and features.

\* \* \*

20. No recorded archeological sites are within 100 feet of the proposed route.

21. No properties listed on the National Register of Historic Places or as Texas

Recorded Historic Landmarks are within 5000 feet of the proposed route.

\* \* \*

29. The Lower Colorado River Authority plans to install a 345/138 kv auto transformer at its Salem substation in or before 1988.

30. The 345/138 kv autotransformer would make the power flowing across the proposed transmission line available to customers in the area; by providing customers in the area a bulk power transmission path from the east, the proposed transmission line would make electrical service in the area more reliable.

31. Construction of the proposed transmission line would provide LCRA with a 345 kv transmission path to the west for power produced at its Fayette plant.

32. The proposed line would improve service to electric customers in the area by reducing line losses, making service more reliable, and releasing the capacity now reserved for wheeling.

### B. *Conclusions of Law*

1. The Commission has jurisdiction over this application pursuant to the Public Utility Regulatory Act (PURA), Tex.Rev.Civ. Stat.Ann. art. 1446c, Section 16 (Vernon Supp.1983) (amended 1984).

2. Houston Lighting and Power Company is a public utility as defined by PURA Section 3(c)(1).

3. HL & P published notice of its application in compliance with PURA Section 54(b), and persons living in the area of the proposed facilities or owning land there intervened in the proceeding pursuant to PURA Section 54(a).

4. HL & P was required by PURA Section 50 and P.U.C. SUBST. R. 23.31(c)(1) to submit an application to amend its certificates of convenience and necessity to include the proposed facilities.

5. A hearing on the application was held pursuant to PURA Section 54(a).

6. HL & P and the intervenors presented sufficient evidence upon which the Commission can make findings of fact in compliance with PURA Section 54(b)–(c).

7. Taking into consideration the adequacy of existing service, the need for additional service, the effect of the granting of a certificate on HL & P and other electric utilities in the proximate area, and the probable improvement of service of lowering of cost to consumers in the area, it is apparent that the certification of the proposed facilities is necessary for the service, accommodation, convenience, and safety of the public, thereby satisfying the requirements of PURA Section 54(b).

8. The proposed facilities will not have a significant adverse effect on such factors as community values, recreational and park areas, historical and aesthetic values, and environmental integrity. PURA Section 54(c).

9. HL & P's certificates of convenience and necessity should be amended to include the proposed facilities as described in HL & P's application.