TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00357-CV






Grubbs Nissan Mid-Cities, Ltd., Appellant


v.


Nissan North America, Inc.; Brett Bray, in his Official Capacity as 

Director of the Motor Vehicle Division of the Texas Department of Transportation;

and Don Davis Nissan Grapevine, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-06-001933, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Grubbs Nissan Mid-Cities, Ltd., appeals from a final order issued by Brett Bray, in
his official capacity as Director of the Motor Vehicle Division of the Texas Department of
Transportation, denying Grubbs's protest of Don Davis Nissan Grapevine, Inc.'s application to
establish a new Nissan dealership in Grapevine, Texas. On appeal, Grubbs complains the final order
was arbitrary and capricious and violates due process and equal protection because the Director
(1) failed to follow agency precedent without explanation; (2) improperly placed the burden of proof
on Grubbs; and (3) failed to consider and weigh all statutory factors and was not based on a rational
connection between the findings and the decision. Grubbs also complains that the administrative
law judge erred in denying Grubbs's motions to exclude expert testimony. Because we conclude the
Director did not act in an arbitrary and capricious manner and that his final order is supported by
substantial evidence, we affirm the Director's final order. (1)


FACTUAL AND PROCEDURAL BACKGROUND


 When Nissan North America, Inc., announced its intent to establish a new dealership
in Grapevine, two competing dealers--Don Davis and Grubbs--sought the manufacturer's approval
to apply for the new dealership license. See Tex. Occ. Code Ann. § 2301.652 (West 2004). Nissan
selected Don Davis to apply for the new dealership location. Don Davis filed an application for a
new motor vehicle dealer license on May 5, 2003, for a Nissan dealership to be located in Grapevine. 
Grubbs filed a timely protest, (2) and Nissan intervened in support of Don Davis's application. In the
face of Grubbs's protest, the Director convened a hearing before an administrative law judge to
determine whether there was good cause to establish a new Nissan dealership in Grapevine. Id.
§ 2301.652(a).

 In the contested-case proceeding, Don Davis had the burden to show good cause for
the establishment of the new Nissan dealership in Grapevine as set forth in section 2301.652(a) of
the occupations code, which provides,


 The [Director] may deny an application for a license to establish a dealership if,
following a protest, the applicant fails to establish good cause for establishing the
dealership. In determining good cause, the [Director] shall consider:


 (1) whether the manufacturer or distributor of the same line-make of new motor
vehicle is being adequately represented as to sales and service;


 (2) whether the protesting franchised dealer representing the same line-make of
new motor vehicle is in substantial compliance with the dealer's franchise to
the extent that the franchise is not in conflict with this chapter;


 (3) the desirability of a competitive marketplace;


 (4) any harm to the protesting franchised dealer; and


 (5) the public interest.



See id. In this case, the second factor was not in dispute, but the other four factors were contested.

 The ALJ conducted a fifteen-day hearing (3) and heard evidence from all parties
regarding the four contested factors. Don Davis and Nissan presented evidence in the form of
empirical data and expert testimony showing that the market would support a new Nissan dealership
in Grapevine, and Grubbs presented evidence that it would not. Dr. Bernard L. Weinstein testified
on behalf of Don Davis that, from 1990 through 2002, the Dallas/FortWorth region, which includes
the City of Grapevine, has been the fastest growing metropolitan region in the country with a
population growth of 34% and employment growth of almost 28%. Dr. Weinstein further testified
that he expected these growth trends to continue in Grapevine, Coppell, Southlake, Westlake, Trophy
Club, and other communities along the Highway 114 corridor for the foreseeable future. Nissan's
expert witness, James Anderson, founder and president of Urban Science Applications, Inc.
("USAI"), testified regarding the adequacy of representation provided by existing Nissan dealers in
the Grapevine area and the impact of the proposed Grapevine dealership on existing dealers. More
specifically, Mr. Anderson testified that the addition of a new Nissan dealership in Grapevine would
benefit consumers by increasing intrabrand competition, i.e., competition between Nissan dealers.

 The record reflects that, prior to the hearing, Grubbs filed motions to exclude the
testimony and expert reports of Dr. Weinstein and Mr. Anderson on the grounds that their testimony
was unreliable and failed to meet the admissibility standard for expert testimony established by the
Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 n.10 (1993),
and adopted by the Texas Supreme Court in E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 556-57 (Tex. 1995). Although the ALJ denied Grubbs's motions, he allowed
Grubbs a "running" objection to the testimony of Dr. Weinstein and Mr. Anderson throughout the
contested-case hearing.

 In contrast to the testimony offered by Don Davis's and Nissan's expert witnesses,
Dr. Ernest H. Manuel and Dr. Marlin Ray Perryman testified on behalf of Grubbs. Dr. Manuel
disagreed with the testimony of Nissan's expert, Mr. Anderson, in two respects. First, Dr. Manuel
questioned the market assumptions and analysis performed by Mr. Anderson and testified that the
relevant market area for this case was the entire Dallas/Fort Worth metro area as defined by Nissan
in their dealer franchise agreements, as well as the 2002 Nissan audit. Second, Dr. Manuel testified
that the benchmark chosen by Mr. Anderson was too high and, therefore, gave the false impression
that Nissan was inadequately represented by its existing franchise dealers. Based on his economic
experience and training, Dr. Perryman also challenged Mr. Anderson's market assumptions and
testified that employment losses at the nearby Dallas/Fort Worth Airport would have a detrimental
effect on short-term economic growth and development in Grapevine.

 In addition to this expert testimony, the ALJ heard testimony from several other
witnesses. Herald Thomas Hardy, the director of Developmental Services for the City of Grapevine,
and Robert Bryan Howard, president of the Don Davis Auto Group, testified on behalf of the
applicant Don Davis. Nissan presented testimony from John Spoon, the regional vice-president
for the Nissan south central region, and Eric K. Grubbs, president of Grubbs Mid-Cities, Ltd. 
Grubbs also presented testimony from David Lever, the assistant regional manager for the Nissan
south central region. (4)

 After the close of the contested-case hearing, the ALJ issued a proposal for decision
("PFD") finding that Don Davis had demonstrated good cause for the addition of a new Nissan
dealership in Grapevine and recommending that the Director dismiss Grubbs's protest and process
the application of Don Davis to completion. The parties then had an opportunity to file exceptions
to the PFD. Upon review of the parties' exceptions, the Director rendered a final order adopting the
PFD with few changes. In his final order, the Director adopted the ALJ's recommendation finding
good cause to establish a new Nissan dealership in Grapevine and dismissed Grubbs's protest. 
Grubbs filed a motion for rehearing, which the Director overruled. Grubbs then sought judicial
review of the Director's final order in district court, and Don Davis removed the suit to this Court
pursuant to section 2301.751(b) of the occupations code. Tex. Occ. Code Ann. § 2301.751(b)
(West 2004).


ANALYSIS


The Controversy

 The crux of this dispute centers on Grubbs's dissatisfaction at two levels: first, that
Nissan chose Don Davis over Grubbs to be the applicant for a new car dealership in Grapevine;
and second, that the Director denied Grubbs's protest of Don Davis's application. In general, Grubbs
complains that the Director's final order was arbitrary and capricious and violated Grubbs's due
process and equal protection rights. More specifically, Grubbs argues that the Director failed to
consider all of the statutory factors when determining whether good cause existed to establish a
new Nissan dealership in Grapevine, failed to follow agency precedent, rendered a decision that
was not rationally connected to the findings, and improperly placed the burden of proof on Grubbs. 
In addition, Grubbs complains that the ALJ erred in denying Grubbs's motions to exclude
expert testimony.

 The Director, Don Davis and Nissan respond that there was no error in the ALJ's
denial of Grubbs's motions to exclude expert testimony, the Director properly considered all required
statutory factors, the final order was supported by substantial evidence, and there was no violation
of Grubbs's constitutional rights.




Standard of Review

 We review the Director's final order under the substantial evidence rule. Id. § 2301.751(a);
Tex. Gov't Code Ann. § 2001.174 (West 2000); Subaru of Am., Inc. v. David McDavid Nissan, Inc.,
84 S.W.3d 212, 224 (Tex. 2002). The substantial evidence rule is a method of review designed to
"'keep the courts out of the business of administering regulatory statutes enacted by the
Legislature.'" Board of Regents v. Martine, 607 S.W.2d 638, 641 (Tex. Civ. App.--Austin 1980,
writ ref'd n.r.e.) (quoting Lewis v. Metropolitan Savs. & Loan Ass'n, 550 S.W.2d 11, 13
(Tex. 1977)). Notwithstanding this deferential standard of review, "'it remains the business of the
courts to see that justice is administered to competing parties by governmental agencies.'" Id.

 Under substantial evidence review, we presume the Board's order is supported by
substantial evidence, and the appellant has the burden of overcoming this presumption. Graff
Chevrolet Co., Inc. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 159 (Tex. App.--Austin 2001,
pet. denied). When a court reviews an agency decision under the substantial evidence rule, the issue
for the reviewing court is not whether the agency's decision was correct, but whether the record
demonstrates some reasonable basis for the agency's action. Central Power & Light Co. v. Public
Util. Comm'n, 36 S.W.3d 547, 561 (Tex. App.--Austin 2000, pet. denied). We may not substitute
our judgment for that of the agency on matters committed to agency discretion. Tex. Gov't Code
Ann. § 2001.174; H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 602
(Tex. App.--Austin 2000, pet. denied). The agency is the sole judge of the weight of the evidence
and the credibility of the witnesses. Central Power & Light, 36 S.W.3d at 561.

 We review the ALJ's decision to admit or exclude evidence for abuse of
discretion--the same standard we apply to trial courts. City of Amarillo v. Railroad Comm'n,
894 S.W.2d 491, 495 (Tex. App.--Austin 1995, writ denied). An agency has broad discretion when
deciding whether to admit expert testimony in an administrative hearing, and its decision will not
be disturbed absent an abuse of discretion. Fay-Ray Corp. v. Texas Alcoholic Bev. Comm'n,
959 S.W.2d 362, 367 (Tex. App.--Austin 1998, no pet.).


Determination of Good Cause

 The single relevant issue in a protest proceeding is "good cause." Tex. Occ. Code
Ann. § 2301.652(a); Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc., 997 S.W.2d 298, 306
(Tex. App.--Austin 1999, pet. denied). The burden of proving good cause to establish the new
dealership is on the applicant--in this case Don Davis. See Tex. Occ. Code Ann. § 2301.652(a). 
In determining whether good cause exists, the statute requires the Director to consider five factors:
(1) whether the manufacturer is adequately represented as to sales and service; (2) whether the
protesting dealer is in substantial compliance with its franchise agreement; (5) (3) the desirability of
a competitive marketplace; (4) any harm to the protesting dealer; and (5) the public interest. Id.
§ 2301.652(a)(1)-(5). Although the Director must consider all five factors, the statute does not place
any emphasis on one factor over another. Id. Because the legislature has given the Director
exclusive jurisdiction to determine the issue of good cause, the question of how best to resolve the
issue, including the weight to be given each statutory factor, is a matter committed to the Director's
discretion. Austin Chevrolet, Inc. v. Motor Vehicle Bd., 212 S.W.3d 425, 432 (Tex. App.--Austin 

2006, pet. denied). This Court has previously recognized that we may not substitute our judgment
for that of the Director on the weight to be given each of the required statutory factors. See Meier
Infinity Co. v. Motor Vehicle Bd., 918 S.W.2d 95, 100 (Tex. App.--Austin 1996, writ denied).


Failure to Follow Agency Precedent

 In Grubbs's first issue on appeal, Grubbs argues that the final order is arbitrary and
capricious and violates due process and equal protection because the Director failed to follow agency
precedent. At the core of Grubbs's complaints is the notion that the Director has departed from
prior agency decisions regarding adequate representation, harm, competition, and public interest. 
Relying on this Court's decision in Austin Chevrolet, Grubbs argues that the Director acted
arbitrarily and capriciously when he failed to follow agency precedent by rejecting the lack of
untapped market potential--or lost opportunity available to the applicant--as grounds for denying
Grubbs's protest. We disagree.

 As this Court recognized in Austin Chevrolet, "'an agency is not bound to follow its
decisions in contested cases in the same way that a court is bound by precedent.'" 212 S.W.3d at 438
(quoting Flores v. Employees Ret. Sys., 74 S.W.3d 532, 533-34 (Tex. App.--Austin 2003,
pet. denied)). Rather, an agency need only "explain its reasoning when it 'appears to the reviewing
court that an agency has departed from its earlier administrative policy or there exists an apparent
inconsistency in agency determinations.'" Id. (quoting Flores, 74 S.W.3d at 544-45).

 Relying on this Court's opinion in Austin Chevrolet, Grubbs urges that the Director's
decision fails to follow agency precedent. But Grubbs's reliance is misplaced. Although Grubbs
is correct that in both cases the agency found that the record failed to demonstrate that the
manufacturer was inadequately represented, that is where the factual similarity ends. In Austin
Chevrolet, the Board found that the level of opportunity was so low in the Houston market at the
time of the initial protest in 1993 that adding another Chevrolet dealership to the market would lead
to "cannibalization of [the new dealer's] closest intrabrand competitors in order to merely survive." 
212 S.W.3d at 433. Moreover, the record in Austin Chevrolet showed that the protesting dealer
already suffered from low profitability and the addition of another dealer only ten miles away "would
have decreased [the protesting dealer's] low profitability across all departments, and caused it and
other dealerships in the market to change their operations in a way that would have resulted in poorer
service to the public." Id.

 The evidence presented in Austin Chevrolet revealed that the Houston market in
1993 was suffering from an extended decline and that the state of the Houston economy was
"sluggish and stagnant." Id. at 434. Dr. Perryman testified in Austin Chevrolet that the overriding
climate in the Houston area during this period was one of "unemployment and job insecurity." Id. 
Dr. Perryman's expert report further concluded that the market was characterized by "a decade of
sluggishness, a declining trend in new automobile sales, stagnant wages, substantial layoffs, and only
modest growth projections." Id. The protesting dealer in Austin Chevrolet also presented evidence
that its new car retail sales would decline 15% to 30% if the agency granted the application at issue. 
Id. Given the struggling financial condition of the protesting dealer and the stagnant condition of
the Houston market in 1993, the Board concluded that good cause did not exist to add a new
Chevrolet dealer at the time. Id. The Board noted, however, that had the protesting dealer been in
a flourishing market, the Board would have expected the dealer to adjust its business strategy to
capture untapped opportunity. Id.

 The evidence in Austin Chevrolet stands in stark contrast to the evidence presented
in this case. Here, the Director found that the potential for future growth in the Grapevine market
was more than sufficient to sustain a new Nissan dealership. Both Dr. Perryman, who testified on
behalf of Grubbs, and Mr. Anderson, who testified on behalf of Nissan, agreed that the economic
future for the Tarrant County area, including Grapevine, was very optimistic. For example,
Dr. Perryman projected a Fort-Worth-Arlington population increase of more than 150,000 by 2007
and a job increase of approximately 70,000. Dr. Perryman agreed with Mr. Anderson that while
automotive retail sales go through up and down fluctuations, he expected 2004 to be the start of an
"up" period. Additionally, Dr. Perryman testified that he expected the retail automotive market to
grow more rapidly in Texas than in the United States, and more rapidly in Dallas/Fort Worth than
in Texas statewide. Their expert testimony was further supported by Grubbs's own actions in
applying for the new Nissan dealership in Grapevine and proposing to build a facility that was as
large as its existing facility in Bedford, and four times the size Nissan was requiring for the new
dealership. In addition, Eric Grubbs testified on cross-examination that it was acceptable for Grubbs
to get the new dealership, but it was not acceptable for anyone else:


 Q (by Don Davis's counsel): Do I correctly understand, sir, that from your earlier
testimony with Mr. Krakow, that it would be okay for you to have a dealership for
Nissan in Grapevine but not for anyone else?


 A: I think that would be true. I don't think I would protest myself.


Thus, the evidence showed that Grubbs recognized the economic growth potential for a new
dealership in Grapevine.

 Another important distinction between this case and Austin Chevrolet is that Grubbs,
unlike the protesting dealer in Austin Chevrolet, was financially healthy. In 2003, although described
as an "off-year" by Grubbs's expert, Grubbs's net profit was $197,704, after payment of salaries, rent
and other compensation to members of the Grubbs family. In 2004, Grubbs's competitive
performance improved, and its annualized net profit, based on the first six months of the year, was
projected to be more than $800,000. Given the flourishing market conditions in Tarrant County, the
Director could have reasonably expected Grubbs to continue to adjust its business strategy to capture
the benefits of projected economic growth. See id.

 Notwithstanding Grubbs's allegations, we hold that the Director's decision in this
case is consistent with, not contrary to, agency precedent. As the Director explained in the order
denying Grubbs's motion for rehearing, Grubbs's reliance on a number of prior agency decisions is
misplaced because those decisions were made regarding "specific proposals at specific geographic
points in specific markets at specific times." In contrast, "[t]he ALJ's reasoning [in this case was]
that the public interest in a vigorous competitive marketplace along with the scope and long term
viability of the Grapevine-area market outweigh[ed] the minimal harm that may or may not ensue." 
Stated differently, the Director iterated that each case must be decided on the facts and evidence
presented therein. This is consistent with this Court's holding in Austin Chevrolet in which we
recognized that "[t]he standard employed by the [Director] varies based on the facts and
circumstances in each case." Id. at 435. Based on the evidence presented during the hearing process
regarding the facts and circumstances of this case, we conclude that the Director properly determined
that Don Davis met its burden to demonstrate good cause to establish a new dealership in Grapevine.

 In further support of its claim that the Director failed to follow agency precedent,
Grubbs argues that in light of the Director's finding regarding adequacy of representation, the
Director was compelled to find in favor of the protestant on the remaining statutory factors of harm,
desirability of a competitive marketplace, and the public interest. In other words, according to
Grubbs, once the Director finds that the manufacturer is adequately represented, the remaining
statutory factors are irrelevant and compel the Director to grant the protest and deny the application
for a new dealership license.

 We reject Grubbs's theory because it reads the other four factors out of the statute. 
As this Court held in Meier Infinity, the Director, not the protesting dealer, "is responsible for
determining which factors to consider, how much weight each factor should receive, and whether
in light of these factors there is 'good cause' for licensing a new dealership." 918 S.W.2d at 100. 
We may not substitute our judgment for that of the Director on which factors are considered to be
the most important, nor may we conduct a de novo review of the Director's "good cause"
determination. See id. We conclude that the Director's decision does not depart from agency
precedent and that the final order is supported by substantial evidence. We overrule Grubbs's
first issue on appeal.


Burden of Proof

 In its second issue on appeal, Grubbs contends that the Director improperly shifted
the burden of proof to the protesting dealer. Grubbs bases its complaint upon a single sentence in
the PFD, which states "[t]here is accordingly enough evidence in this case to support either the
outcome sought by Don Davis and Nissan or the outcome sought by Grubbs," and finding of fact 45,
which states "[a] preponderance of evidence fails to justify a finding that Grubbs would be materially
harmed by the proposed Grapevine dealership."


 1. Statement in PFD

 With regard to the statement in the opening of the PFD that there is enough evidence
to support either the outcome sought by Don Davis and Nissan or the outcome sought by Grubbs,
the ALJ was not, as Grubbs suggests, commenting on the burden of proof or the weight of the
evidence. Instead, the ALJ was simply commenting on the sheer volume of evidence in the record
of this proceeding. Nowhere in the statement highlighted by Grubbs does the ALJ mention the
weight or credibility to be given such evidence. Nor does the statement express that the ALJ was
somehow shifting the burden of proof from the applicant to Grubbs. Accordingly, we conclude that
Grubbs simply reads this statement out of context and gives it undue weight.


 2. Finding of Fact 45

 In further support of its claim that the Director improperly shifted the burden of proof, 
Grubbs points to finding of fact 45. Based on this finding, Grubbs argues that the Director
improperly shifted the applicant's burden of proof on the issue of harm to Grubbs. But Grubbs's 
argument ignores the statutory framework in section 2301.652.

 The statute requires the applicant for a new dealership license to demonstrate good
cause for establishing the dealership. See Tex. Occ. Code Ann. § 2301.652(a). Although the statute
requires the Director to consider "any harm to the protesting franchised dealer" when determining
whether the applicant has demonstrated good cause, the statute does not require the applicant to
demonstrate a complete lack of harm to the protesting dealer. (6) See id. § 2301.652(a)(4) (emphasis
added). The legislature's use of the word "any" in section 2301.652(a)(4) contemplates that there
may be some harm, and the statute simply requires the Director to consider the extent and effects of
any harm when making a good cause determination. We believe that is precisely what the Director
has done in this case.

 Finding of fact 45 states only that there is not a preponderance of evidence "to justify
a finding that Grubbs would be materially harmed by the proposed Grapevine dealership." There
is nothing in the plain language of this finding that demonstrates a shift in the burden of proof. As
the Director explained, he understood this finding "to mean that, as one of five elements listed in the
relevant [c]ode section, the [a]pplicant did prove a lack of notable harm to the [p]rotestant and
[p]rotestant did not successfully rebut same." We agree. Because the level of harm will vary
depending on the circumstances in each case and is merely one of five factors to be taken into
account when determining good cause, we conclude that the Director acted within his discretion in
considering the evidence of harm within the overall determination of good cause in this case. 
Accordingly, we hold that the Director did not improperly shift the burden of proof to Grubbs, and
we overrule Grubbs's second issue on appeal.


Failure to Consider Required Statutory Factors

 In its third issue on appeal, Grubbs argues that the Director failed to consider and
weigh all of the required statutory factors and that the Director's decision is not based on a rational
connection between the findings and the decision. The record does not support Grubbs's claims.

 Instead, the record reflects that the ALJ considered all of the required statutory 
factors in his proposal for decision and recommended that the Director find "good cause" to grant
the application and deny Grubbs's protest. With minor changes, the Director adopted the PFD,
including the ALJ's discussion and findings on each of the required statutory factors and the ALJ's
"good cause" recommendation. This Court has previously held that the Director need not make
findings on issues that the Director did not find persuasive or on which he did not rely for support
of his ultimate determination. See Meier Infinity, 918 S.W.2d at 99 (citing State Banking Bd. v.
Valley Nat'l Bank, 604 S.W.2d 415, 419 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.)).

 The statute only requires an ultimate finding on good cause. To the extent Grubbs
argues that the Director was required to make specific findings of fact as to each of the statutory
factors in section 2301.652(a), this Court rejected the same argument in Meier Infinity, 918 S.W.2d
at 100. Like the protesting dealer in Meier Infinity, Grubbs relies on City of El Paso v. Public Utility
Commission of Texas, 883 S.W.2d 179, 184 (Tex. 1994). As this Court explained, however, City
of El Paso merely requires an agency to consider all of the statutory criteria; it does not stand for
the proposition that the Director must make ultimate findings as to each of the statutory factors. 
See Meier Infinity, 918 S.W.2d at 100. Stated differently, an agency's final order must reflect
that the agency considered the statutory factors, and its underlying findings must be stated in such
a way that a reviewing court can reasonably evaluate whether the underlying findings support the
statutory criteria. Id. (citing Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.,
665 S.W.2d 446, 451 (Tex. 1984)). In this case, the underlying findings must reflect that the
Director considered adequacy of representation, the desirability of a competitive marketplace, harm
to the protesting dealer, and the public interest. (7) We believe that the underlying facts as found by
the ALJ and adopted by the Director demonstrate that the Director properly considered each of these
statutory criteria.

 For similar reasons, we also reject Grubbs's contention that the Director's final order
violates section 2301.711(a)(1) of the occupations code because it does not contain a specific finding
regarding Grubbs's compliance with its franchise dealer agreement. See Tex. Occ. Code Ann.
§ 2301.711(a)(1) (West 2004). In a similar context, the supreme court held that a final order of the
Public Utility Commission reflected the agency's consideration of the statutory criteria even though
the order lacked a specific finding couched in the language of the statute. See Goeke v. Houston
Lighting & Power, 797 S.W.2d 12, 14 (Tex. 1990). Upon reviewing the entire order to determine
whether the agency considered the statutory factors, the court observed that the agency need not
make "ultimate findings" on each factor. Id.; see also Meier Infinity, 918 S.W.2d at 99 (findings are
not required on matters agency does not find persuasive or does not rely upon to support its ultimate
decision). In this case, the textual discussion of the PFD reflects that the ALJ considered the
franchise compliance factor and concluded that it was not in dispute. The Director adopted the
PFD with no changes to the textual discussion. Therefore, even though the final order does not
include a specific finding with respect to Grubbs's franchise compliance, we conclude there was no
violation of section 2301.711(a)(1) because the final order reflects that the Director properly
considered and weighed all of the required statutory factors. Were we to find a violation of section
2301.711, we would not be obligated to reverse the Director's order unless Grubbs demonstrated
prejudice to its substantial rights as a result of the alleged violation. See Tex. Gov't Code Ann.
§ 2001.174(2) (West 2000). Given that it was undisputed that Grubbs was in compliance with its
franchise agreement, and Grubbs does not argue on appeal that its substantial rights were prejudiced
by the lack of a specific finding on franchise compliance in the Director's final order, we overrule
Grubbs's complaint.

 To the extent Grubbs raises additional challenges to specific findings in the Director's
final order, we reject those challenges because Grubbs has failed to demonstrate that the final order
is not supported by substantial evidence. Essentially, Grubbs complains that the evidence does not
support the challenged findings. (8) But even if the evidence preponderates against the Director's
decision, we may not substitute our judgment for that of the Director on questions committed to the
Director's discretion. See Charter Med., 665 S.W.2d at 452-53; Austin Chevrolet, 212 S.W.3d at
431. So long as the evidence is such that reasonable minds could have reached the conclusion
reached by the agency, a reviewing court must uphold the agency's final order. Charter Med., 665
S.W.2d at 452-53; see also Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364
(Tex. 1983). Having reviewed the record, we conclude that the evidence demonstrates a reasonable
basis for the action taken by the Director, see Charter Med., 665 S.W.2d at 452, and we reject
Grubbs's contention that there is no rational connection between the findings and the Director's
decision. We overrule Grubbs's third issue on appeal.


Evidentiary Rulings

 In its fourth issue on appeal, Grubbs complains that the ALJ improperly denied its
motions to exclude expert testimony offered by Don Davis's expert, Dr. Weinstein, and Nissan's
expert, Mr. Anderson. (9) Arguing that Mr. Anderson's entire testimony was unreliable and should
have been excluded, Grubbs seizes upon the following statements in the PFD: "The credibility of
USAI's study unravels on this theory of imbedded inadequacy," and "the reliability of this standard
[proposed by Mr. Anderson] is further undercut . . . ." (10) Although there is no similar statement in
the PFD regarding Dr. Weinstein's testimony, Grubbs argues that his testimony was likewise
unreliable and should have been excluded.

 We review the agency's rulings on the admissibility of evidence under the abuse of
discretion standard we apply to trial courts. City of Amarillo, 894 S.W.2d at 495. Although Grubbs
is correct that the rules of evidence apply in administrative hearings, the standard for admissibility
of evidence is broader for administrative proceedings than it is in the trial court. See Tex. Gov't
Code Ann. § 2001.081 (West 2000) (allowing admissibility of otherwise inadmissible evidence if
(1) necessary to ascertain facts not reasonably susceptible to proof under the rules of evidence; (2)
not precluded by statute; and (3) of a type reasonably relied upon by a prudent person). The agency
has broad discretion in deciding whether to admit expert testimony in an administrative hearing, and
its decision will not be overturned on appeal absent an abuse of discretion. Id.; Fay-Ray Corp.,
959 S.W.2d at 367.

 As this Court explained in Austin Chevrolet, the legislature has given the Director
"exclusive jurisdiction to determine the issue of good cause, based on its expertise and experience
in making this determination." 212 S.W.3d at 432. Thus, as a matter of law, the Director was
"uniquely and exclusively qualified to make that determination," and "[t]he question of how best to
resolve the issue was a matter for the [Director's] discretion." See id.

 The Texas Rules of Evidence authorize the admission of expert testimony where it
will assist the trier of fact in understanding the evidence or in determining a fact issue. Tex. R. Evid.
702; see Story Servs., Inc. v. Ramirez, 863 S.W.2d 491, 499 (Tex. App.--El Paso 1993, writ denied). 
In addition, it is well established that the agency is the sole judge of the weight to be accorded the
testimony of each witness. Central Power & Light, 36 S.W.3d at 561. When weighing the evidence, 

the agency may accept or reject the testimony of witnesses or may accept part of a witness's
testimony and disregard the remainder. Id.

 The record in this case demonstrates the ALJ accepted some portions of
Mr. Anderson's testimony and rejected others. Likewise, the record shows the ALJ accepted some
portions of Dr. Weinstein's testimony and rejected others. To the extent the PFD makes reference
to those portions of Mr. Anderson's testimony that the ALJ found unreliable or lacking in credibility,
we conclude that the ALJ was simply pointing out those portions of the testimony that he rejected. 
Accordingly, we hold there was no abuse of discretion in the ALJ's denial of Grubbs's motions to
exclude expert testimony. We overrule Grubbs's fourth issue.


Due Process/Equal Protection

 Subsumed within various issues raised by Grubbs on appeal is the argument
that the Director's decision violates Grubbs's due process and equal protection rights. See
U.S. Const. amend. XIV, § 1 (equal protection, due process); Tex. Const. art. I, §§ 3, 19 (equal
protection, due process). In administrative proceedings, due process requires that parties be afforded
a full and fair hearing on disputed fact issues. Office of Pub. Util. Counsel v. Public Util. Comm'n,
185 S.W.3d 555, 576 (Tex. App.--Austin 2006, pet. denied). At a minimum, due process requires
that the "rudiments of fair play" be observed. Id.; see also State v. Crank, 666 S.W.2d 91, 94
(Tex. 1984). Equal protection simply requires that administrative agencies treat similarly situated
parties the same. BMW of N. Am. v. Motor Vehicle Bd., 115 S.W.3d 722, 726 (Tex. App.--Austin
2003, pet. denied).

 The record in this case reflects that the agency held a fifteen-day contested case
hearing in which Grubbs was permitted to present testimony on all disputed fact issues. The record
further reflects that the Director's final order comports with agency precedent. Moreover, despite
Grubbs's allegations to the contrary, we have previously concluded that there were significant factual
differences between Grubbs and the protesting dealer in Austin Chevrolet; thus, Grubbs cannot show
that it was a similarly situated party. Accordingly, we conclude that Grubbs has failed to
demonstrate either a due process or equal protection violation.


CONCLUSION


 Because we find that the Director did not act in an arbitrary and capricious manner
and that his order is supported by substantial evidence, we affirm the Director's final order.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: May 23, 2007

1. The legislature abolished the Motor Vehicle Board in 2005 and replaced it with a
single director of the motor vehicle division of the Texas Department of Transportation. See Act of
May 30, 2005, 79th Leg., R.S., ch. 281, § 7.01, sec. 2301.002(2), (10), 2005 Tex. Gen. Laws 778,
839. Brett Bray currently serves as division director.
2. A new car dealer may protest a manufacturer's decision to establish a new car dealership
of the same line-make within a fifteen mile radius of the existing dealership. Tex. Occ. Code Ann.
§ 2301.652(b)(2) (West 2004). There was no dispute that Grubbs satisfied this statutory requirement
and, therefore, had standing to protest Don Davis's application.
3. The hearing was conducted over ten consecutive working days, from September 27 through
October 8, 2004. The hearing was recessed by agreement of the parties and reconvened for an
additional five days, from November 29 through December 3, 2004.
4. In addition to the live testimony presented by the parties, Grubbs also presented deposition
testimony from three witnesses--William Tate, Mayor of the City of Grapevine, Ron Kutz, an
employee of Group One Automotive Company, and Jeff Ruble, Dealer Operations Manager of
Nissan North America--which was also considered by the ALJ.
5. There is no dispute that Grubbs was in substantial compliance with its franchise agreement. 
Therefore, we will limit our discussion accordingly.
6. In support of its contention that Don Davis was required to demonstrate a lack of harm
to Grubbs as the protesting dealer, Grubbs relies on this Court's statement in Austin Chevrolet, Inc.
v. Motor Vehicle Board, 212 S.W.3d 425, 432-33 (Tex. App.--Austin 2006, pet. denied), which
provided that "[i]n demonstrating good cause for the establishment of a new dealership, [the
applicant] w[as] required to show that the [new] dealership would not 'harm' the protesting
franchised dealer." Grubbs's reliance on this statement is misplaced. Because the applicant need
only demonstrate good cause to establish a new dealership, see Tex. Occ. Code Ann. § 2301.652(a)
(West 2004), this statement overstates the applicant's burden of proof under the statute. Thus, we
reject Grubbs's contention that Don Davis was required to demonstrate a total lack of harm to
Grubbs in order to demonstrate good cause within the statutory framework.
7. The franchise compliance factor was undisputed. To the extent Grubbs argues that a
specific finding on franchise compliance was required, we address that issue below.
8. We note that Grubbs neither argues nor demonstrates prejudice to its substantial rights with
regard to its challenges to these specific findings. In the absence of any prejudice to Grubbs's
substantial rights, we may not reverse the Director's final order. See Tex. Gov't Code Ann.
§ 2001.174 (West 2000).
9. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 n.10 (1993).
10. These statements are included in that portion of the PFD discussing Mr. Anderson's theory
that, based on the market studies conducted by USAI, Nissan was, as a general rule, under-represented in almost all Texas markets. Thus, according to Mr. Anderson, it was appropriate to use
the highest market penetration standard when evaluating the adequacy of Nissan's representation in
the Grapevine market. As explained in the PFD, however, the ALJ rejected what he called
Mr. Anderson's "theory of embedded inadequacy."